**INTERSTATE COMMERCE COMMISSION, Plaintiff–Appellant,**

v.

**MR. B'S SERVICES, LIMITED, doing business as Caddy Cab, Bobbie Wilson and Marlo Wilson, Defendants–Appellees.**

**No. 90–1101.**

United States Court of Appeals, Seventh Circuit.

Submitted * Oct. 26, 1990.
Decided June 6, 1991.

Joseph P. Bohn, Barbara J. Welsch, I.C.C., Compliance & Consumer Assistance, Chicago, Ill., for plaintiff-appellant.

William P. Dineen, Milwaukee, Wis., for defendants-appellees.

Before BAUER, Chief Judge, and CUMMINGS and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The Interstate Commerce Commission (ICC) instituted this litigation against a taxicab company. The ICC sought an injunction to prohibit the company from operating as an interstate motor carrier without having the requisite license, insurance, and security on file with the ICC. The district court denied the ICC's motion for summary judgment and dismissed the case because the company was not under the ICC's jurisdiction. For the following reasons, we reverse the judgment of the district court and

---

* After the case had been scheduled for oral arguments, appellees moved to waive oral arguments. We granted the motion and now decide this case on the basis of the briefs and record submitted to this court.

remand the case for further proceedings consistent with this opinion.

## I

## BACKGROUND

### A. Facts

Mr. B's Services, Ltd., is a Wisconsin corporation with its principal offices located in Beloit, Wisconsin. It is engaged in business as Caddy Cab and holds itself out as a taxicab service to the communities of Beloit and Janesville, Wisconsin. Caddy Cab has never possessed a certificate, permit, or license from the ICC granting it authority to transport passengers in interstate commerce for compensation, nor has it maintained on file with the ICC proof of appropriate public liability insurance or security for the interstate transportation of passengers. Nonetheless, for the past several years, Caddy Cab has transported employees of the Chicago and North Western Transportation Company (CNW) from the CNW facility in Janesville, Wisconsin, to CNW locations in Chicago, Illinois and Northlake, Illinois. Under the arrangement between Caddy Cab and CNW, transportation was provided to the described locations; passengers were exclusively CNW train crew members; and CNW made monthly payments of $150 per trip to Caddy Cab, pursuant to a voucher system. At the time of these events, public transportation was unavailable between Janesville and Chicago or Northlake.

The distance between Janesville and either Chicago or Northlake is approximately 100 miles. During July through December 1988, Caddy Cab transported CNW crews to those locations on fifty-six separate occasions. And, from January through June 1989, Caddy Cab carried the CNW crews to those locations thirty-one times. As might be expected, Caddy Cab traveled on the interstate highway system while transporting CNW crews. At no time, however, has Caddy Cab provided taxicab services from anywhere in Illinois to Wisconsin.

Caddy Cab's total gross revenue for all of its taxicab operations in 1987 was $143,-000. Of that total, Caddy Cab earned $1,400 as a result of providing CNW taxicab services. Gross revenue for 1988–89 was $167,000, and taxicab services provided for CNW accounted for $13,050. On average, Caddy Cab receives 100–150 daily requests for local cab services within the Janesville–Beloit–South Beloit area. Caddy Cab's vehicles are operated pursuant to licenses granted by these municipalities, and, in order to be licensed, Caddy Cab must carry the requisite amount of public liability and property damage insurance.

On June 16, 1989, the ICC filed a complaint for an injunction against Caddy Cab. The ICC alleged that Caddy Cab had been operating and was continuing to operate as an interstate motor carrier of passengers without having the required public liability insurance or security on file with the ICC, in violation of 49 U.S.C. § 10927(a), and 49 C.F.R. § 1043, and without having an appropriate certificate, permit, or license from the ICC, in violation of 49 U.S.C. § 10921. The ICC requested the district court permanently to enjoin Caddy Cab from so operating. After Caddy Cab answered the complaint, the ICC moved for summary judgment. The district court denied the motion and dismissed the complaint because it found that, as a matter of law, the ICC lacked jurisdiction over Caddy Cab. The ICC filed a timely notice of appeal.

### B. District Court Opinion

The court observed that generally the ICC has jurisdiction over motor carriers that transport passengers " 'between a place in a State and a place in another State.' " Mem.Op. at 4 (quoting 49 U.S.C. § 10521(a)(1)(A) ). The court noted, however, that there is an exemption for "taxicab services." See 49 U.S.C. § 10526(a)(2).[1] In the court's estimation, the pertinent issue was whether Caddy Cab qualified for this exemption. The ICC interpreted "taxicab service" as requiring "inherently local" activity. Transportation of passengers

---

1. *See infra* text accompanying footnote 3.

over a distance in excess of seventy miles was not considered a local activity, in the ICC's view. *See* Mem.Op. at 5. While recognizing the deference afforded an administrative body charged with interpreting a statute it administers, the court rejected the ICC's interpretation of "taxicab service." The court believed "equally compelling arguments" supported a finding that Caddy Cab's operations were clearly a "taxicab service" when performing services in the Janesville–Beloit–South Beloit area. *Id.* at 6.

The court then observed that Caddy Cab did not forfeit taxicab status when it made infrequent trips to Chicago and Northlake. The court reasoned that, while no precise definition of "local" existed, the circumstances of this case, supported by the "scarce" case law on the subject, rendered Caddy Cab's services local. *See id.* Influencing the court's decision was the fact that the interstate component of Caddy Cab's business accounted for a small portion of its total revenue and operation. Moreover, in the court's view, the presence of regulation by local municipalities in this case eliminated the need for national regulation by the ICC. *See id.* at 7–8. Indeed, the court noted that it would have decided the case differently if a "substantial portion" of Caddy Cab's services involved numerous interstate trips or if Caddy Cab had avoided local regulation. *See id.* at 8.

## II

## ANALYSIS

■■■ This is a case of statutory interpretation. The ICC has general jurisdiction under 49 U.S.C. § 10521(a), which provides in relevant part:

**2.** *See* 49 U.S.C. §§ 10522–10526.

**3.** The predecessors to sections 10521(a) and 10526(a)(2) were contained in the Motor Carriers Act, Pub.L. No. 74–255, §§ 202(a), 203(b)(2), 49 Stat. 543, 543, 545 (1935). *See* 49 U.S.C.A. §§ 302(a), 303(b)(2) (West 1963). As the ICC notes, Congress enacted 49 U.S.C. §§ 10521(a) and 10526(a)(2) in 1978 as part of a restatement, "without substantive change," of "laws enacted before May 16, 1978." *See* Revised Interstate Commerce Act, Pub.L. No. 95–473, §§ 1, 3, 92

[T]he Interstate Commerce Commission has jurisdiction over transportation ... to the extent that passengers, property, or both, are transported by motor carrier—

(1) between a place in—

(A) a State and a place in another State.

49 U.S.C. § 10521(a)(1)(A). However, the ICC's general jurisdiction is subject to several exemptions,[2] including section 10526(a), which states in pertinent part:

The Interstate Commerce Commission does not have jurisdiction under this subchapter over—

. . . .

(2) a motor vehicle providing taxicab service and having capacity of not more than 6 passengers and not operated on a regular route or between specified places.

49 U.S.C. § 10526(a)(2).[3] The narrow issue presented is whether Caddy Cab qualifies under this exemption. Caddy Cab essentially adopts the district court's analysis. The ICC argues that its interpretation of the statutory exemption was reasonable.

In any statutory interpretation case, our ultimate goal is to "discern the will of Congress and to apply it to the particular facts of the case." *Illinois Dep't of Pub. Aid v. Sullivan*, 919 F.2d 428, 431 (7th Cir.1990). The methodology that we must employ is well established. We begin by examining the language of the statute itself. If it is unambiguous, "our inquiry is at an end; the congressional intent embodied in that plain wording must be enforced." *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir.1990). Here, the statute is ambiguous. The phrase "taxicab service" is left undefined, and that

Stat. 1337, 1466 (1978); H.R. No. 1395, 95th Cong., 2d Sess. 4–5, 58–59, *reprinted in* 1978 U.S.Code Cong. & Admin. News 3009, 3013, 3067. In 1980, 1982, and 1986, section 10521 was further amended, but the later amendments are not relevant to this appeal. The only change to section 10526(a)(2) was a minor grammatical amendment. *See* Act of June 3, 1980, Pub.L. No. 96–258, § 1(5)(A), 94 Stat. 425, 425.

definition is pivotal to the resolution of the present dispute.[4]

■ When a "syntactical analysis" of the statutory language fails to produce a satisfactory answer regarding Congress' intent, "we must employ other less satisfactory means to ascertain, as best we can, the legislative will." *Id.* at 1327. One of those means, long recognized by the judiciary, is to consider an administrative agency's interpretation of the statute. "An administrative agency has discretion to interpret a statute that is not crystal clear." *Board of Trade v. S.E.C.*, 923 F.2d 1270, 1273 (7th Cir.1991). The Supreme Court has instructed that courts are to accord "considerable weight ... to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).[5] Absent contrary congressional intent, the agency's interpretation should be upheld, when it is "based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. We need not conclude that the agency's construction is the only one it could have adopted, or that we would have reached the same result. *See id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11; *Larimore v. Comptroller of Currency*, 789 F.2d 1244, 1248 (7th Cir.1986) (en banc). The agency's

construction need only constitute "a *reasonable* interpretation of the statute." *Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir.1991) (per curiam) (emphasis supplied); *see Abercrombie v. Clarke*, 920 F.2d 1351, 1359 (7th Cir.1990). The rationale underlying this deference is that, when a statute is ambiguous, the agency charged with its administration "can determine better than we generalist judges" whether the statutory purpose "is advanced, or retarded" by activities or procedures with which the agency is intimately familiar. *Board of Trade*, 923 F.2d at 1273.

Applying these principles to the present case, we must conclude that the district court, while recognizing the principle enunciated in *Chevron*, failed to give proper deference to the ICC's interpretation of the statute. As the court observed, the ICC "has consistently interpreted that for a method of transportation to qualify as a taxicab service, the taxicab must be 'inherently local' in activity." In the ICC's view, "transportation involving passenger service between distances greater than approximately 70 miles cannot be considered taxicab service." Mem.Op. at 5. We cannot say that the ICC's interpretation is unreasonable or based on an impermissible construction of the statute. Taxicabs generally perform local transportation services,[6]

**4.** We agree with the ICC's position (and the district court's implicit recognition, Mem.Op. at 6) that simply labeling a motor vehicle a taxicab will not *per se* exempt the use of that vehicle from the ICC's jurisdiction under 49 U.S.C. § 10526(a)(2). The ICC correctly observes that, if this were the case, section 10526(a)(2) would not speak in terms of a "motor vehicle" providing taxicab *service.* In any event, such an interpretation would produce absurd results. A vehicle could carry fewer than seven passengers anywhere in the United States, crossing state boundaries, unregulated because it was a taxicab vehicle or so labeled. Moreover, in terms of statutory consistency, the other exemptions do not apply to a specific type of motor vehicle. Instead, they apply to particular types of transportation services or transportation between or in specific areas. *See* 49 U.S.C. §§ 10522–10526.

**5.** *Accord Fort Stewart Schools v. Federal Labor Relations Auth.*, 110 S.Ct. 2043, 2046, 109 L.Ed.2d 659 (1990); *Federal Deposit Ins. Corp. v. Philadelphia Gear Corp.*, 476 U.S. 426, 439, 106

S.Ct. 1931, 1938, 90 L.Ed.2d 428 (1986); *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985); *Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969).

**6.** *See, e.g., Portland Airport–Petition for Declaratory Order*, 118 M.C.C. 45, 48 (1973); *Terminal Taxi Co. Common Carrier Application*, 112 M.C.C. 796, 801 (1971); *D & M Taxi Co. Common Carrier Application*, 96 M.C.C. 439, 445 (1964); *Dulgerian Common Carrier Application*, 53 M.C.C. 385, 387 (1951); *Becker Common Carrier Application*, 51 M.C.C. 783, 785–86 (1950); *Whitman's Black & White Cab Co. Common Carrier Application*, 47 M.C.C. 737, 741 (1948). These cases were decided under the "taxicab service" exemption as contained in the Motor Carriers Act (MCA), and codified in 49 U.S.C.A. § 303(b)(2) (West 1963). Thus, the cases predate the Revised Interstate Commerce

while other modes of transportation (*e.g.*, bus, train, aircraft) provide transportation for more distant travel. Furthermore, a distance of more than seventy miles reasonably can be viewed as not local in nature.[7]

■ The district court's emphasis on the fact that Caddy Cab's interstate transportation constituted a small portion of its total revenue and services is misplaced. Under the court's reasoning, a taxicab company could transport passengers from Wisconsin to California and remain exempt from ICC regulation so long as such transportation comprised only a small portion of the services provided. Neither the statutory language nor the ICC's long-standing and consistent interpretation of the exemption supports this interpretation. Section 10526(a)(2) exempts "a *motor vehicle* providing taxicab services," it does not exempt a taxicab company. Hence, the focus must be on whether the motor vehicle provides

services that are local in nature, not on whether the percentage of revenues generated from, or services provided by, the interstate transportation constitutes a small portion of the taxicab company's total operation. Therefore, contrary to the district court's conclusion, a taxicab may lose its status as a provider of "taxicab services" under section 10526(a)(2) when it provides long-distance interstate transportation (albeit infrequently).[8]

■ In a similar vein, we cannot accept the district court's assessment that municipal regulation of the taxicab company obviates the need for national jurisdiction by the ICC. We agree with the ICC that "the scope of Commission regulation is determined by the Interstate Commerce Act, not the presence or absence of municipal regulation." Appellant's Br. at 15. That Act does not preclude the ICC's jurisdiction when municipal regulation is present.[9] *See* 49 U.S.C. §§ 10522–10526.

Act (RICA), which reenacted the "taxicab service" exemption in what is now 49 U.S.C. § 10526(a)(2). However, as we discussed *supra* note 3, the RICA did not substantively change the law under the MCA, including the taxicab exemption. Therefore, these cases, help demonstrate the consistency of the ICC's interpretation of "taxicab service." *See* Hines & Sloan, *Transportation Regulation & Innovation: The Dial-A-Bus*, 55 Minn.L.Rev. 461, 469–70 (1971).

7. As we observed *supra* note 3, when Congress reenacted the "taxicab service" exemption in the RICA it did so without substantive change from the exemption as contained in the MCA. The ICC's interpretation of the "taxicab service" exemption under the MCA was the same as it is now for the exemption in the RICA. This interpretation was also a matter of public record when Congress was considering its restatement of the exemption in the RICA. That Congress refrained from making any substantive changes to the exemption bolsters our conclusion that the ICC's interpretation of the phrase "taxicab service" in section 10526(a)(2) is a reasonable reflection of congressional intent.

Caddy Cab relies on the only court decision that directly addresses the issue of taxicab exemption. In *Interstate Commerce Comm'n v. Miller*, 360 F.Supp. 1167 (D.N.H. 1973), the court concluded that Congress intended "to exempt from I.C.C. regulation *all* taxicabs which 'hav[e] a capacity of not more than six passengers' and which are 'not operated on a regular route or between fixed termini.'" *Id.* at 1170 (emphasis in original) (quoting 49 U.S.C.A.

§ 303(b)(2) (West 1963)). We reject the *Miller* court's wholesale exemption of *all* services by taxicabs. See our discussion *supra* note 4. Indeed, the district court did not accept this extreme view. *See* Mem.Op. at 6. Moreover, the *Miller* court indicated that the determination of what is a taxicab service could only be made on an *ad hoc* basis. *See* 360 F.Supp. at 1170. As we discuss in the text, however, considerable deference must be afforded the ICC's interpretation of "taxicab service."

8. *See Becker Common Carrier Application*, 51 M.C.C. 783, 785–86 (1950) (ICC held no authority required for operations between cities up to 25 miles apart because carrier performed "taxicab services," but authority was required for operation by same carrier between cities 95 miles apart).

9. The district court's emphasis on local regulation was based on *Jones v. Giles*, 741 F.2d 245 (9th Cir.1984). In determining that the MCA was inapplicable to ambulance services, the Ninth Circuit held that the MCA's listed exemptions were not exhaustive and therefore the fact that ambulances were not specifically exempted from the MCA did not prohibit it from exempting such services. *See id.* at 249. The court then added, "ambulances, and taxicabs, unlike interstate trucking firms, are usually subject to municipal regulation. Ambulances, like taxicabs, are therefore not the sorts of transportation that requires national regulation." *Id.* at 250. *Giles* therefore did not address the pertinent issue of whether the mere presence of

The district court should have granted the ICC's motion for summary judgment. It is undisputed that Caddy Cab is a motor carrier transporting passengers across state lines over a distance of approximately 100 miles. The ICC's interpretation of the phrase "taxicab services" is reasonable. Therefore, to be exempt from ICC regulation, Caddy Cab's taxicab operations must be local in nature. Those operations are not local when Caddy Cab transports CNW crews from Wisconsin to Illinois. Accordingly, the ICC had jurisdiction over Caddy Cab pursuant to 49 U.S.C. § 10521(a)(1)(A); and Caddy Cab did not qualify for exemption under 49 U.S.C. § 10526(a)(2).[10]

### Conclusion

For the foregoing reasons, we reverse the judgment of the district court and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED

municipal regulation automatically divests the ICC of jurisdiction. Moreover, we reject any reading of Giles that answers that query in the affirmative.

**10.** Because we decide this case under the *Chevron* analysis, we need not address the remaining issues discussed by both parties concerning whether Caddy Cab provided services "between specified places" under 49 U.S.C. § 10526(a)(2), and whether Caddy Cab performed "charter services," which would subject it to ICC regulation. Caddy Cab's argument, presented here in the most summary fashion, that the Bus Regulatory Reform Act of 1982 changed the ICC's interpretation of "taxicab service" as meaning local service is waived because it is presented for the first time on appeal. *See Maciosek v. Blue Cross & Blue Shield United,* 930 F.2d 536, 540 n. 2 (7th Cir.1991).