**FORT WAYNE COMMUNITY SCHOOLS, Plaintiff–Appellee,**

v.

**FORT WAYNE EDUCATION ASSOCIATION, INC., Defendant–Appellant,**

**and**

**United States Postal Service, Defendant–Appellee.**

No. 90–3316.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1991.

Decided Oct. 13, 1992.

5. Gorman has also alleged that Salem falsely criticized Gorman in the prior memos.

James P. Fenton, William Sweet (argued), Barrett & McNagny, Fort Wayne, Ind., for plaintiff-appellee.

Daniel E. Serban, Shambaugh, Kast, Beck & Williams, Fort Wayne, Ind., Deborah C. Malamud, Robert H. Chanin (argued), Bredhoff & Kaiser, Washington, D.C., Richard J. Darko, Richard S. Pitts, Lowe, Gray, Steele & Hoffman, Indianapolis, Ind., for defendant-appellant.

Tina Nommay, Asst. U.S. Atty., Office of the U.S. Atty., Fort Wayne, Ind., Jonathan R. Siegel, Michael J. Singer, Lisa A. Olson, Dept. of Justice, Civil Div., Appellate Section, Washington, D.C., William Sweet (argued), Barrett & McNagny, Fort Wayne, Ind., for defendant-appellee.

Before COFFEY and RIPPLE, Circuit Judges, and WISDOM, Senior Circuit Judge.[*]

RIPPLE, Circuit Judge.

A collective bargaining agreement between the Fort Wayne Community Schools (the School Corporation) and the Fort Wayne Education Association, Inc. (the Association), the exclusive representative of the teachers employed by the School Corporation, provided that the Association could use the School Corporation's interschool mail delivery system to communicate with the teachers. The School Corporation brought a declaratory judgment action naming the Association and the United States Postal Service (Postal Service) as defendants in order to determine whether its carriage of the Association's letters to the teachers violated 18 U.S.C. § 1694.[1] The district court held that it did, and the Association appeals. For the reasons set forth in this opinion, we affirm in part and vacate and remand in part.

---

[*] The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. Section 1694 is one of a group of statutes known as the Private Express Statutes, codified at 18 U.S.C. §§ 1693–99 and 39 U.S.C. §§ 601–606.

# I

## BACKGROUND

### A. *Facts*

The Fort Wayne Education Association is the exclusive bargaining representative of the teachers in the Fort Wayne Community Schools. The collective bargaining agreement between the Association and the School Corporation provided that the Association "shall be provided a separate mailbox in each school. The [Association]'s interschool mail shall be distributed by the Board. The [Association]'s office shall be a regular stop on the Board's regularly scheduled interschool mail delivery system." R. 58, Ex. 1 at 8. The agreement also provided that no competing teacher organization was to be allowed to use the interschool mail delivery service or school mailboxes.

The Association's office was made a regular stop on the School Corporation's route, and for several years the School Corporation carried not only Association mail addressed to the School Corporation and the School Corporation's letters to the Association, but also the Association's mail to and from the teachers. However, after it learned of the Supreme Court's decision in *Regents of the University of California v. Public Employment Relations Board*, 485 U.S. 589, 108 S.Ct. 1404, 99 L.Ed.2d 664 (1988), the School Corporation notified the Association that its carriage of Association correspondence without the payment of postage might violate federal statutes prohibiting private postal service (the Private Express Statutes). The School Corporation continued to deliver its own mail to the Association's office, but stopped carrying the Association's mail. The Association filed a grievance, and the grievance was submitted to binding arbitration. The arbitrator held that delivery of the following kinds of Association correspondence was permissible under the Private Express Statutes and directed the School Corporation to resume delivery of them:

1. Letters specifically addressed to the Association, its agents, representatives, and members, from the Schools, its agents and representatives, letters addressed to the Schools, its agents and representatives, from the Association, its agents, representatives, and members, and letters addressed to Association agents, representatives, and members from the Association, its agents and representatives, having anything whatsoever to do with (a) administration and enforcement of the collective bargaining agreement, (b) education or education-related workshops, seminars, information and materials, and (c) non-education matters concerning the teachers for which the Schools receive benefits; and

2. Flyers and other such non-specifically addressed materials between any of the entities, their agents, representatives, or members, described in 1 above which relate to 1(a), (b) and (c) above. R. 57. Impermissible under the arbitrator's award is the carriage by the School Corporation of Association correspondence concerning only the business of the Association, such as letters or flyers "notifying the teachers of Association meetings and workshops." R. 2, Ex. A.

The School Corporation informed the Postal Service of the arbitrator's determination. The Postal Service then formally notified the School Corporation that delivery without payment of postage of much of the Association correspondence specified in the arbitrator's award would violate federal criminal law and would subject the School Corporation, the Association and persons acting in their behalf to criminal and civil penalties. The School Corporation then brought suit against the Association and the Postal Service for declaratory judgment, asking the court to determine which Association mail, if any, it might lawfully carry. All parties moved for summary judgment. Although the Postal Service was joined as a defendant, its motion for summary judgment was brought as a cross claim against the Association.

### B. *District Court Proceedings*

The District Court determined that, under *Regents*, the School Corporation was prohibited from carrying the Association's

mail. *Regents* dealt with correspondence addressed to university faculty from a union that was attempting to organize the faculty into a collective bargaining unit, rather than, as is the case here, mail to teachers from a union that was their exclusive bargaining representative. However, the district court held that this distinction was of no significance for the purposes of the Private Express Statutes. Characterizing the correspondence at issue as Association correspondence to teachers, not in their capacity as employees of the School Corporation, but in their "capacity as dues-paying members of the local teachers union," the district court found that the correspondence did not relate to the current business of the School Corporation and that therefore the "letters of the carrier" exception to the Private Express Statutes did not apply. 742 F.Supp. 1031, 1033 (N.D.Ind. 1990). Accordingly, the district court held that the School Corporation's carriage of the Association's mail was contrary to federal law, and granted summary judgment to the Postal Service and the School Corporation.

## II

## ANALYSIS

### A. *Standard of Review*

■ We review de novo a district court's grant or denial of summary judgment. *Hayes v. Otis Elevator Co.,* 946 F.2d 1272, 1277 (7th Cir.1991); *Campbell v. White,* 916 F.2d 421, 422 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1314, 113 L.Ed.2d 248 (1991). The party moving for summary judgment bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

### B. *Merits*

■ In the present case, the underlying facts are not in dispute; the issues presented for our review in this case are primarily legal.

1.

We first turn to an examination of the statute at issue. The "letters of the carrier" exception to the federal government's monopoly on postal services is contained in 18 U.S.C. § 1694:

> Whoever, having charge or control of any conveyance operating by land, air, or water, which regularly performs trips at stated periods on any post route, or from one place to another between which the mail is regularly carried, carries, otherwise than in the mail, any letters or packets, except such as relate to some part of the cargo of such conveyance, or to the current business of the carrier, or to some article carried at the same time by the same conveyance, shall, except as otherwise provided by law, be fined not more than $50.

Chief Justice Rehnquist elaborated on the reason for this statute and its companion sections, known collectively as the Private Express Statutes, in *Air Courier Conference of America v. American Postal Workers Union,* 498 U.S. 517, 111 S.Ct. 913, 915, 112 L.Ed.2d 1125 (1991):

> The monopoly was created by Congress as a revenue protection measure for the Postal Service to enable it to fulfill its mission. *See Regents of University of California v. Public Employment Relations Board,* 485 U.S. 589, 598, 108 S.Ct. 1404, 1410, 99 L.Ed.2d 664 (1988). It prevents private competitors from offering service on low-cost routes at prices below those of the Postal Service, while leaving the Service with high-cost routes and insufficient means to fulfill its mandate of providing uniform rates and service to patrons in all areas, including those that are remote or less populated.

He further noted:

> The legislative history of the sections of the Act limiting private carriage of letters shows a two-fold purpose. First, the Postmaster General and the States most distant from the commercial centers of the Northeast believed that the postal monopoly was necessary to prevent users of faster private expresses

from taking advantage of early market intelligence and news of international affairs that had not yet reached the general populace through the slower mails. S.Doc. No. 66, 28th Cong., 2d Sess., 3–4 (1845). Second, it was thought to be the duty of the Government to serve outlying, frontier areas, even if it meant doing so below cost. H.R.Rep. No. 477, *supra*, at 2–3. Thus, the revenue protection provisions were not seen as an end in themselves, nor in any sense as a means of insuring certain levels of public employment, but rather were seen as the means to achieve national integration and to ensure that all areas of the Nation were equally served by the Postal Service.

The Private Express Statutes enable the Postal Service to fulfill its responsibility to provide service to all communities at a uniform rate by preventing private courier services from competing selectively with the Postal Service on its most profitable routes. If competitors could serve the lower cost segment of the market, leaving the Postal Service to handle the high-cost services, the Service would lose lucrative portions of its business, thereby increasing its average unit cost and requiring higher prices to all users. *See* Report of the President's Commission on Postal Organization, Towards Postal Excellence, 94th Cong., 2d Sess., 129 (Comm.Print 1968) (footnote omitted). The postal monopoly, therefore exists to ensure that postal services will be provided to the citizenry at-large....

*Id.* 498 U.S. at —, —, 111 S.Ct. at 919–20.

The Supreme Court has twice dealt directly with the application of the "letters of the carrier" exception. In *United States v. Erie Railroad Co.*, 235 U.S. 513, 35 S.Ct. 193, 59 L.Ed. 335 (1915), the Court considered letters, carried by a railroad, which related to the railroad's joint operation with Western Union of telegraph lines over the right of way of the railroad company. Before the agreement, the railroad had operated a telegraph line for its own use, and under the agreement Western Union was required to maintain a line for railroad use. Under the contract between the railroad and Western Union, the railroad was required at its own expense to furnish office room, light and heat for telegraph service and to provide an operator and other employees to act as agents for the telegraph company in receiving, transmitting, and delivering telegrams. A "joint superintendent" of the telegraph operations was appointed whose salary was paid half by the railroad and half by Western Union. The contract provided that the joint superintendent and the operator and other employees were "deemed to be the servants of the telegraph company, except when engaged in the transmission of messages for the railroad company and in certain construction work." *Erie*, 235 U.S. at 519–20, 35 S.Ct. at 195. The letters at issue were letters from the joint superintendent to one of the employees provided by the railroad to operate the telegraph office at one of the railroad's stations; the letters concerned the telegraph operations. The Court concluded that, although

> it may be said that there is a railroad business in which the telegraph company has no concern, that is, business distinctly railroad, yet it is also so far concerned with the telegraph business as to make its efficient and successful operation of interest to it. To promote such operation was the purpose of the two letters which are the basis of the indictment, and the business comes within the description of the statute and is current.

*Id.* at 520, 35 S.Ct. at 195.

The Court again addressed the "letters of the carrier" exception in *Regents of the University of California v. Public Employment Relations Board*, 485 U.S. 589, 108 S.Ct. 1404, 99 L.Ed.2d 664 (1988). In *Regents*, officials of the University of California had refused to carry mail from a union to certain employees of the university. The union was attempting to organize the employees. The Court concluded that the union's letters did not relate to the current business of the university:

> The ordinary sweep of the term ["current business"], however, falls far short

of encompassing the letters involved in this case. The letters relate to the Union's efforts to organize certain of appellant's employees into a bargaining unit. This is a subject in which appellant certainly is interested, but it is also a subject which can be accurately described only as the Union's current business, not appellant's.

*Regents*, 485 U.S. at 594, 108 S.Ct. at 1409. The Court rejected the union's argument that California's Higher Education Employer–Employee Relations Act, by requiring universities to give unions access to their "means of communication" and by announcing California's "fundamental interest in the development of harmonious and cooperative labor relations," transformed the union's attempts to organize the university's employees into the university's business. Because the Court found that the letters did not relate to the current business of the carrier, it did not reach the question of whether section 1694 could be read "to include a requirement that the letters be written by or addressed to the carrier." *Id.* at 597, 108 S.Ct. at 1410.

The letters in the present case are also letters from a union to teachers. These letters, however, are not part of a union's campaign to organize a bargaining unit; they are letters from a recognized exclusive representative to employees in the bargaining unit, union members and non-members alike. The Supreme Court, in another context, has distinguished these two kinds of correspondence. In *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Supreme Court considered the question of union access to an Indiana interschool mail system. In that case, a collective bargaining agreement between a school system and the teachers' exclusive bargaining representative gave the exclusive representative access to the interschool mail system, but forbad access

to rival unions. A rival union brought suit against the exclusive representative and members of the school board, claiming that the denial of access to the mail system violated the First Amendment. In holding that there was no First Amendment violation, the Court had occasion to examine and distinguish correspondence between an exclusive representative and the teachers in the bargaining unit and correspondence to the teachers from a rival union. The Court noted that, when it was designated the exclusive bargaining agent, PEA "assumed an official position in the operational structure of the District's schools." *Perry*, 460 U.S. at 50 n. 9, 103 S.Ct. at 957 n. 9. The Court rejected the suggestion that, because the Perry School District did not control the content, correspondence to the teachers from the exclusive representative did not "pertain to the 'official business'" of the schools. *Id.* at 51 n. 10, 103 S.Ct. at 958 n. 10. Thus, the denial of access to the rival union, while allowing access to the exclusive representative, was a permissible restriction of use "to those who participate in the forum's official business." *Id.* at 53, 103 S.Ct. at 959.

The Postal Service submits that *Perry*'s characterization of the correspondence from the exclusive representative to teachers as "pertain[ing] to official business" is irrelevant to the case at hand and that correspondence that pertains to official business for First Amendment purposes is not necessarily "current business" for the purposes of the Private Express Statutes. It justifiably reminds us that the Supreme Court has cautioned that a statement in its opinions "must be taken in the context in which it is made." *Air Courier Conference*, 498 U.S. at ——, 111 S.Ct. at 920. It then emphasizes that, in *Perry*, the Supreme Court specifically refused to consider whether the carriage of the union's correspondence violated the Private Express Statutes.[2] Yet, neither *Erie* nor *Regents*

2. *See Perry*, 460 U.S. at 39 n. 1, 103 S.Ct. at 951–52 n. 1;

The United States Postal Service, in a submission as *amicus curiae*, suggests that the interschool delivery of material to teachers at various schools in the District violates the Private

Express statutes, 18 U.S.C. §§ 1693–1699 and 39 U.S.C. §§ 601–606, which generally prohibit the carriage of letters over postal routes without payment of postage. We agree with the Postal Service that this question does not directly bear on the issues before the Court in

suggests that the term "current business" should be given other than its "ordinary common meaning." *See Erie*, 235 U.S. at 520–22, 35 S.Ct. at 195–96; *Regents*, 485 U.S. at 594–95, 108 S.Ct. at 1409; *see also United States v. Bell*, 936 F.2d 337, 342 (7th Cir.1991) ("It is a maxim of statutory construction that, unless otherwise defined, words should be given their ordinary, common meaning."). Thus, while *Perry* certainly does not dictate that we consider the correspondence of the Association as the current business of the School Corporation we cannot ignore the reality that *Perry*'s distinction between the correspondence of an exclusive bargaining representative and that of an unrecognized union suggests a principled ground for distinguishing the facts in the present case from those in *Regents*. *Regents* decided that the university's current business did not, in "the ordinary sweep of the term," encompass letters from a union attempting to organize its employees. *Regents*, 485 U.S. at 595, 108 S.Ct. at 1409. At a minimum, *Perry* counsels against too hasty a determination that *Regents* controls the outcome here.

### 2.

We turn to an examination, in some detail, of the relationship between the School Corporation and the Association. At the outset, it must be emphasized that, as exclusive bargaining representative, the Association represents not just its members, but all the teachers in the bargaining unit.

This relationship between the Association, as exclusive representative, and the School Corporation is governed by Indiana statute. Ind.Code Ann. § 20–7.5–1–1 to § 20–7.5–1–14. Indiana law recognizes that the relationship between school systems ("school corporation employers") and teachers and other professionals in education ("certificated school employees")

> is not comparable to the relation between private employers and employees among others for the following reasons: (i) a public school corporation is not operated for profit but to insure the citizens of the State rights guaranteed them by the Indiana State Constitution; (ii) the obligation to educate children and the methods by which such education is effected will change rapidly with increasing technology, the needs of an advancing civilization and the requirements for substantial educational innovation; (iii) the Indiana General Assembly has delegated the discretion to carry out this changing and innovative educational function to the local governing bodies of school corporations, composed of citizens elected or appointed under applicable law, a delegation which these bodies may not and should not bargain away; and (iv) public school corporations have different obligations with respect to certificated school employees under constitutional and statutory requirements than private employers have to their employees.

Ind.Code Ann. § 20–7.5–1–1(d). Recognizing the special employer/employee relationship between teachers and schools, Indiana law defines a special role for a union which has been recognized as the exclusive representative of an appropriate unit of teachers pursuant to section 20–7.5–1–10 of the Indiana Code. Strikes are forbidden. Ind. Code § 20–7.5–1–14. A school corporation not only has a duty to bargain collectively with the exclusive representative over the terms and conditions of employment,[3] but must also "discuss" "curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations." Ind.Code § 20–7.5–1–5(a). The statute defines "discuss" as meaning "the performance of the mutual obligation of the school corporation through its superintendent and the exclusive representative to

---

this case. Accordingly, we express no opinion on whether the mail delivery practices involved here comply with the Private Express statutes or other Postal Service regulations.

**3.** Subjects of bargaining are "salary, wages, hours, and salary and wage related fringe bene-

fits." Ind.Code Ann. § 20–7.5–1–4. "A contract may also contain a grievance procedure culminating in final and binding arbitration of unresolved grievances." *Id.*

meet at reasonable times to discuss, to provide meaningful input, to exchange points of view, with respect to items enumerated in Section 5 of this chapter." Ind. Code § 20–7.5–1–2(*o* ). If a school corporation forms a committee which is the "sole instrumentality in the drafting and proposal of a discussable matter," the exclusive representative of the teachers may not be excluded from the committee. *Evansville–Vanderburgh School Corporation v. Roberts*, 273 Ind. 449, 405 N.E.2d 895, 902 (1980). It is also noteworthy that the collective bargaining agreement between the School Corporation and the Association establishes joint committees to administer excess sick leave and to deal with matters of teacher evaluation and in-service training.

### 3.

The Postal Service submits two interrelated reasons as to why we ought not consider the Association's communications, as described in the arbitrator's decision, as constituting the current business of the School Corporation-carrier. First, it notes that the correspondence does not qualify for the exemption under postal regulations. Secondly, it submits that, in any event, the correspondence does not relate to the current business of the school corporation.

### a.

In order to enforce the statutory exception, the Postal Service has promulgated the following regulation:

> The sending or carrying of letters is permissible if they are sent by or addressed to the person carrying them. If the individual actually carrying the letters is not the person sending the letters or to whom the letters are addressed, then such individual must be an officer or employee of such person (see § 310.-3(b)(2)) and the letters must relate to the current business of such person.

6239 C.F.R. § 310.3(b)(1).

The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Nat-*

*ural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). "A precondition to deference under *Chevron* is a congressional delegation of administrative authority." *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 649, 110 S.Ct: 1384, 1390, 108 L.Ed.2d 585 (1990). That delegation is found in section 401(2) of Title 39. There, Congress gave the Postal Service power "to adopt, amend, and repeal such rules and regulations as it deems necessary to accomplish the objectives of this title." Because the Private Express Statute at issue is codified under Title 18, not Title 39, the Association contends that it is not part of the statutory scheme that the Postal Service is entrusted to administer, but rather a criminal statute to be administered by the courts. This argument was rejected by the District of Columbia Circuit, which concluded that the rulemaking authority granted to the Postal Service by section 401(2) extended to the Private Express Statutes codified under Title 18:

> Appellant asserts that promulgation of these regulations, which have the effect of defining the federal crime of transporting letters outside the mails, was beyond the authority of the Postal Service. We disagree. As the District Court observed, the Service is authorized under 39 U.S.C. § 401(2) (1976) to promulgate regulations to further the objectives of Title 39, which includes provisions concerning the postal monopoly. While 18 U.S.C. § 1969—the private express provision at issue here—is not a part of Title 39, its purpose is intimately connected to that title, and it was only separated from the private express sections in 1909 when the United States criminal laws were codified into Title 18. Accordingly, a fair reading of the rulemaking authority of 39 U.S.C. § 4012 is that it extends to § 1969.

*Associated Third Class Mail Users v. United States Postal Service,* 600 F.2d 824, 826 n. 5 (D.C.Cir.) (upholding regulation defining "letter"), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48

(1979).[4] As we have noted previously, the postal monopoly established by the Private Express Statutes, 18 U.S.C. §§ 1693–99 and 39 U.S.C. §§ 601–606, "was created by Congress as a revenue protection measure for the Postal Service to enable it to fulfill its mission." *Air Courier Conference*, 498 U.S. at ——, 111 S.Ct. at 915. The Postal Service's regulations elucidating the Private Express Statutes are aimed at "accomplish[ing] the objectives" of Title 39 and are within the scope of the rulemaking authority delegated to the Postal Service. *See Regents*, 485 U.S. 589, 603, 108 S.Ct. 1404, 1413 (White, J., concurring).

Because the Private Express Statutes are part of a statutory scheme that the Postal Service is entrusted to administer, we must examine the validity of regulations promulgated by the Postal Service to interpret those statutes under the methodology set forth in *Chevron*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Ransom v. Bowen*, 844 F.2d 1326, 1332–33 (7th Cir.), *cert. denied*, 488 U.S. 969, 109 S.Ct. 499, 102 L.Ed.2d 535 (1988). "We begin by examining the language of the statute itself. If it is unambiguous, 'our inquiry is at an end; the congressional intent embodied in that plain wording must be enforced.'" *I.C.C. v. Mr. B's Services, Ltd.*, 934 F.2d 117, 120 (7th Cir.1991) (quoting *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir.1990)).

In its brief, the Postal Service argues convincingly that the regulatory interpretation of the statute is necessary in order to fulfill the legislative design of the Congress in enacting this exception to the Private Express Statutes. The Postal Service first notes, and we agree, that the statutory text is ambiguous because it leaves undefined the terms "relate" and "current business." If the inquiry were limited to the text alone, the exception "could conceivably be so broad as to permit carriage of any letter concerning a *topic* in which the carrier is interested for business reasons." Postal Service Br. at 14 (emphasis supplied). On the other hand, the text

could mean that "the *letter* must be part of the business." *Id.* at 15. Because the statute is ambiguous, the Postal Service is well within its prerogatives in attempting to resolve the ambiguity by regulation. "An administrative agency has discretion to interpret a statute that is not crystal clear." *Mr. B's Services*, 934 F.2d at 121 (quoting *Board of Trade v. S.E.C.*, 923 F.2d 1270, 1273 (7th Cir.1991)).

 Nevertheless, a *regulation* which is inconsistent with a statute as construed by the Supreme Court is invalid. *See Maislin Indus., U.S. v. Primary Steel, Inc.*, 497 U.S. 116, 131, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis*, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning."). Also invalid is an agency's *interpretation* of a regulation which is inconsistent with a statute as construed by the Supreme Court. *See I.C.C. v. Transcon Lines*, 968 F.2d 798 (9th Cir.1992) (invalidating ICC's interpretation of regulations to allow result contrary to Supreme Court construction of statute).

b.

In examining the regulation under this deferential standard, we find in the Postal Service's submission much with which we can agree. At the outset, we agree that the Postal Service is on solid ground in defining the statutory exemption by specifying the possible senders and the recipients. The Postal Service correctly notes that the legislative intent of Congress is starkly set forth in the legislative history of the statute. As Justice O'Connor pointedly noted in *Regents*, "[t]his history suggests an intention to codify the Attorney General's 1886 construction. That construction includes a requirement that the letters be 'sent by or addressed to the company, or on its behalf,' to qualify for the letters-of-the-carrier exception." *Re-*

---

**4.** *Cf. National Rifle Ass'n v. Brady*, 914 F.2d 475, 479–80 n. 3 (4th Cir.1990) (rejecting argument that agency's power to promulgate regulations was limited by fact that the gun control statute is a criminal statute), *cert. denied*, —— U.S. ——, 111 S.Ct. 1580, 113 L.Ed.2d 645 (1991).

*gents,* 485 U.S. at 596, 108 S.Ct. at 1410 (quoting 21 Op.Atty.Gen. at 400).

It is at this point that the Postal Service's submission becomes somewhat contradictory. The Postal Service emphasizes that the intent of the Congress was to mirror *exactly* the intent of the Attorney General. It is clear, as the Postal Service admits, that the Attorney General was of the view that Congress "evidently had no thought of interfering with the private methods of carriers on post routes for communicating directly with their own employees or with other persons." Appellee's Br. at 19 (quoting 21 Op.Atty.Gen. at 398–99). And, as Justice O'Connor specifically confirmed in *Regents,* 485 U.S. at 596, 108 S.Ct. at 1410, the business of a corporation, even under the "narrow view" adopted by the Court in *Erie,* can include the "efficient and successful operation" of a joint operation, *Erie,* 235 U.S. at 520, 35 S.Ct. at 195. Yet, inexplicably, the Postal Service deviates, both in textual language and in rationale, from the statement of the Attorney General and from the interpretive holdings of the Supreme Court. Textually, the departure is subtle but significant. While, as the Postal Service notes in its brief, the Attorney General believed the statute required that the letter be "sent or addressed to the carry company, *or on its behalf,*" 21 Op.Atty.Gen. at 400, the regulation omits the italicized language. Appellee's Br. at 19. In rationale, the deviation is more pronounced and the contradiction more evident. The Postal Service introduces a rigid concept of ownership; the letters must belong to the carrier, not simply be sent on its behalf. Moreover, the Postal Service's position simply does not recognize the Attorney General's and the Supreme Court's concern that the letters could be sent on behalf of the carrier in furtherance of its participation in a joint venture or other similar arrangement.

The regulation correctly notes that the carrier's own letter, or one sent to it, are exempt from the strictures of the statute. However, the regulation omits the possibility that the letter might be "on behalf of"

the carrier. We cannot rest our decision on an interpretation of a regulation that narrows a statute beyond the interpretation given it by the Supreme Court. *See Maislin Indus.,* 497 U.S. at 131, 110 S.Ct. at 2768. Therefore, as we examine whether the correspondence in question is related to the business of the carrier, we must, in conformity with the mandates of *Erie* and *Regents,* consider that possibility as well.

c.

■ As we understand the Association's position,[5] it does not argue that the Private Express Statutes permit the School Corporation to carry letters which relate purely to the Association's business. Such letters, it concedes, do not relate to the current business of the schools. Nor would such letters be addressed to the teachers in their capacity as employees, but rather in their capacity as union members. However, letters that deal with the administration of the collective bargaining agreement are more problematic. Such letters must be sent by the Association to *all* School Corporation employees in the bargaining unit. An employee's status with respect to union membership is immaterial. The Association communicates with the teachers not because they are union members but because they are employees of the School Corporation. The Postal Service and the district court give far too little heed to this analytical distinction. The Postal Service is quite correct in suggesting that a state law may not define the work of a state government entity so vaguely and so broadly as to render meaningless the Private Express Statutes. *See Regents,* 485 U.S. at 595, 108 S.Ct. at 1409 (rejecting the argument that a general state policy of promoting harmonious labor relations permitted a state university to consider the communications of a union attempting to organize its workers as university business). By contrast, Indiana state law imposes specific mutual obligations on a school district and the particular union that is operating as the exclusive bargaining agent for a school district's employees. To argue, as the Postal

---

5. *See* Appellant's Br. at 17, 35.

Service explicitly does, that the Association occupies the same status as "a vendor with whom the School District has contracted for the provision of school supplies," Appellee's Br. at 29, is to misstate significantly the nature of the relationship created by Indiana law and to misapprehend substantially the nature of the collective bargaining process in the public sector at the state level when an exclusive bargaining agent is involved.

Nevertheless, despite the *partial* infirmity of its regulation, as presently written, and despite its unrealistic characterization of public sector labor relations in Indiana, there is much in the Postal Service's conclusions with which we must agree. Despite the close working relationship, mandated by law, between the School Corporation and the Association, it is not realistic, either as a matter of law or as a matter of fact, to characterize at least most of the business of the Association as the business of the School Corporation-carrier. As a general proposition, the School Corporation's business is to operate the schools; the Association's business is to ensure that the interests of the employees, union and nonunion members alike, are adequately considered when operational decisions are made. Because of the professional character of the employees, their interests transcend the usual individual-centered interests in such matters as wages, hours, and working conditions. However, mutually shared, or at least overlapping, interests do not fuse perspectives and make the business of those responsible for running the school system congruous with that of those employed as its teachers. To characterize the School Corporation-carrier and the Association as involved in a joint venture analogous to that of the railroad and telegraph company in *Erie* is to ignore the fundamental nature of the collective bargaining process. The School Corporation and the Association simply do not share the same community of interest, as did the two participants in the *Erie* joint venture.

6. For example, a joint committee plans and approves in-service training and approves credits received by teachers for it. R. 58, Ex. 1 at 101.

Therefore, *most* of the communications at issue cannot be considered those of the School Corporation-carrier. Nor can *most* be considered in any manner to be sent "on behalf of" the Corporation-carrier. They are sent by the Association, an entity that had a distinct, independent and at times adversarial role to that of the School Corporation-carrier. Nor can it be argued that the employees, as recipients or senders of mail from or to the Association, are acting as employees of the Corporation. While they are employees of the Corporation and are recipients or senders of the correspondence in question because of that status, they cannot be said to act *as agents* of the Corporation when communicating with *their* collective bargaining representative.

#### d.

■ One ambiguity remains. While we believe it is clear that *most*—indeed the vast majority—of the communications at issue are *not* letters of or on behalf of the School Corporation, we notice that the collective bargaining agreement sets up certain joint committees to administer programs such as excess sick leave.[6] We cannot on the record before us determine whether communications, if any, from these joint committees with respect to the *administration* of a plan rather than bargaining over it, are so closely sponsored by the School Corporation as to be characterized as its correspondence or as sent on its behalf. This limited issue requires further development of the record in the district court.

### Conclusion

Application of regulatory schemes written in another era of our Nation's history presents special problems. The Postal Service has changed greatly since the enactment of the Private Express Statutes, and modern public sector collective bargaining statutes create legal relationships unknown in that earlier era. Accommodation of competing interests is essentially the task of the legislature and the regulating agency,

Another joint committee administers a "sick leave bank" and considers requests for additional days of sick leave. *Id.* at 56.

369

not a judicial one. Accordingly, the judgment of the district court is affirmed in part and vacated in part. The case is remanded for further proceedings consistent with this opinion. The Postal Service may recover its costs in this court.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.