NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court - Manchester District Division
No. 2013-796


THE STATE OF NEW HAMPSHIRE

v.

WAYNE A. BICKFORD & a.

Argued: October 9, 2014
Opinion Issued: May 19, 2015


Joseph A. Foster, attorney general (Lisa L. Wolford, assistant attorney general, on the brief and orally), for the State.


Brennan, Caron, Lenehan & Iacopino, of Manchester, (Michael J. Iacopino and Jenna M. Bergeron on the brief, and Mr. Iacopino orally), for the defendants.


HICKS, J. The defendants, Gerald Mandelbaum, Christopher Lajoie, Nicholas Meuse, Michael Garrity, and Wayne Bickford, were charged with operating a taxicab business without a license from the City of Manchester (City). The Circuit Court (Michael, J.) granted the defendants' motion to dismiss on federal preemption grounds. See 49 U.S.C. §§ 14501(a), (d) (2012). The State appeals, arguing that the local ordinances are not preempted by

federal law and that the circuit court has jurisdiction over the charges. We reverse and remand.

The following facts are supported by the record or undisputed by the parties. Mandelbaum owns Amoskeag Airport Service (AAS), a sole proprietorship in Manchester, and Amoskeag Black Car (ABC), a registered trade name for a subdivision of AAS. Mandelbaum operates these businesses pursuant to a motor carrier permit issued by the United States Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA) that, he asserts, grants him the authority "to engage in the transportation as a common carrier of passengers, in charter and special operations, by motor vehicle in interstate or foreign commerce." Mandelbaum does not, however, hold a City license to operate a taxicab service.

Bickford, Garrity, Lajoie, and Meuse are drivers for AAS and ABC. In March and April of 2013, they were each cited by the Manchester Police for operating a taxicab service in violation of the City's business and taxicab licensing ordinances (City Ordinances). See Manchester, N.H., Rev. Ordinances title XI, ch. 110, § 110.02; id. title XI, ch. 118, §§ 118.01 et seq. (2014). On two occasions, Mandelbaum was also issued a citation for the same reasons.

On July 8, 2013, the defendants moved to dismiss the citations, arguing that: (1) federal law preempts the City Ordinances; (2) Mandelbaum's FMCSA certification divests the City of jurisdiction to regulate AAS or ABC; and (3) neither AAS nor ABC constitutes a taxicab service as defined by statute or ordinance. The State objected and, after a hearing, the trial court granted the defendants' motion to dismiss "without prejudice to the State's right to petition the FMCSA for further review of the defendants' activities." The State filed a motion to reconsider, which was denied. This appeal followed.

Although the parties raise numerous issues, we need only address the following: (1) whether federal law preempts the City Ordinances; and (2) whether federal law requires the State to first bring its complaints before the FMCSA. Because resolution of these issues requires both statutory interpretation and a determination of federal preemption, we review the trial court's decision de novo. Appeal of Bretton Woods Tel. Co., 164 N.H. 379, 386-87 (2012); State v. Merriam, 150 N.H. 548, 549 (2004). When interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Pelkey v. Dan's City Used Cars, 163 N.H. 483, 487 (2012), aff'd, 133 S. Ct. 1769 (2013). We do not read words or phrases in isolation, but in the context of the entire statutory scheme. Id. When construing federal statutes, we construe them in accordance with federal policy and precedent. Id.

2

We first consider whether federal law preempts the City Ordinances. State and local laws are preempted when: "(1) Congress expresses an intent to displace state law; (2) Congress implicitly supplants state law by granting exclusive regulatory power in a particular field to the federal government; or (3) state and federal law actually conflict." Disabilities Rights Center, Inc. v. Comm'r, N.H. Dept. of Corrections, 143 N.H. 674, 676 (1999). The federal preemption doctrine is based upon the Supremacy Clause of the United States Constitution. U.S. CONST. art. VI, cl. 2; Arizona v. United States, 132 S. Ct. 2492, 2500 (2012); Appeal of Sinclair Machine Prod's, Inc., 126 N.H. 822, 826 (1985). "Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (quotation, brackets, and ellipsis omitted). "Accordingly, the purpose of Congress is the ultimate touchstone of pre-emption analysis." Id. (quotation and brackets omitted).

The defendants do not argue that Congress expressly displaced state law by enacting 49 U.S.C. §§ 14501(a) and 14501(d). Instead, they argue that enforcement of the City Ordinances against them brings state and federal law into conflict, and that when such conflict occurs state law must yield. Specifically, they contend that "[f]ederal law clearly exempts taxicab services from FMCSA regulation" and that "Mandelbaum's business cannot be licensed both under the FMCSA Certificate and local Manchester, NH taxicab ordinances." We disagree.

We first examine the federal statutory scheme upon which the defendants rely. Title 49 U.S.C. §§ 13101 et seq. (2012) govern the federal regulation of interstate transportation provided by motor carriers, water carriers, brokers, and freight forwarders, and seek "[t]o ensure the development, coordination, and preservation of a transportation system that meets the transportation needs of the United States." 49 U.S.C. § 13101(a). In overseeing the transportation of motor carriers of passengers, the federal government endeavors "to cooperate with the States on transportation matters for the purpose of encouraging the States to exercise intrastate regulatory jurisdiction in accordance with the objectives of [49 U.S.C. §§ 13101-14916]." Id. § 13101(a)(3)(A). To achieve these goals, Congress has vested the Secretary of Transportation (Secretary) and the Surface Transportation Board (STB) with jurisdiction "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers . . . are transported by motor carrier" from one state to another or within a single state as long as the transportation, in relevant part, crosses into another state. Id. § 13501(1). Congress has directed the FMCSA to carry out the "duties and powers related to motor carriers or motor carrier safety vested in the Secretary by" the statutes here at issue. Id. § 113(f) (2012).

3

Congress, however, explicitly denied the federal government jurisdiction over "a motor vehicle providing taxicab service." Id. § 13506(a)(2). Congress has defined taxicab service to mean:

> [P]assenger transportation in a motor vehicle having a capacity of not more than 8 passengers (including the driver), not operated on a regular route or between specified places, and that –
>
> (A) is licensed as a taxicab by a State or local jurisdiction; or
>
> (B) is offered by a person that –
>
> (i) provides local transportation for a fare determined (except with respect to transportation to or from airports) primarily on the basis of the distance traveled; and
>
> (ii) does not primarily provide transportation to or from airports.

Id. § 13102(22).

Federal law displaces the states' ability to regulate the "scheduling of interstate or intrastate transportation . . . provided by a motor carrier of passengers . . . on an interstate route" and to regulate "the implementation of any change in rates for such transportation . . . except to the extent that notice . . . of changes in schedules may be required" for motor carriers subject to the Secretary's or the STB's jurisdiction. Id. § 14501(a) (emphasis added). It also displaces the states' ability to enforce any law or regulation requiring a license or imposing a fee on motor vehicles providing pre-arranged ground transportation service if such service is within the jurisdiction of the Secretary or the STB, "meets all applicable vehicle and intrastate passenger licensing requirements of the State or States in which the motor carrier is domiciled or registered to do business," and is provided pursuant to a contract for transportation from one state to a destination in another state or within a single state but with an intermediate stop in another state. Id. § 14501(d); Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 289 (D.N.J. 2004) (holding that 49 U.S.C. § 14501(d) prohibits enforcing licensing or fee requirements against non-resident providers of prearranged ground transportation provided they satisfy the requirements of § 14501(d)); S. Rep. No. 107-237, at 1 (2002) ("The purpose of this bill . . . is to prohibit a State, . . . other than the home licensing State, from enacting or enforcing any law, rule, or regulation requiring a license or fee on a motor vehicle that is providing prearranged interstate ground transportation service." (emphasis added)). Here, again, the federal law explicitly exempts taxi services from the jurisdiction of the Secretary. 49 U.S.C. § 14501(d)(3)(A). Federal law also establishes the process that motor carriers must follow to register with the

Secretary and the FMCSA, if they wish to provide interstate transportation services.  Id. § 13901(a); 49 C.F.R. § 385.301(a) (2014).

The plain language of these statutes requires a motor carrier engaging in interstate commerce or transit to be within the jurisdiction of the Secretary and, thus, the FMCSA; purely intrastate activities are left to state and local authorities to regulate.  See Leonard Express, Inc. v. United States, 298 F. Supp. 556, 560 (W.D. Pa. 1969) (recognizing that a motor carrier cannot rely on its federal certification to avoid compliance with state law when conducting purely intrastate activities).  Furthermore, Congress explicitly exempts taxicab services from any federal jurisdiction.  49 U.S.C. §§ 13506(a)(2), 14501(d)(3)(A).  The exemption recognizes that taxicab services are inherently local in nature.  See Buck v. California, 343 U.S. 99, 102 (1952) ("The operation of taxicabs is a local business.  For that reason Congress has left the field largely to the states."); I.C.C. v. Miller, 360 F. Supp. 1167, 1170-71 (D.N.H. 1973) (finding that federal law generally exempts taxicab services from federal regulation and that "bona fide taxicab service" constitutes local transportation).  Accordingly, we conclude that federal law neither expressly nor implicitly preempts the City Ordinances.

Nevertheless, when an actual conflict arises between state or local law and federal law, state or local law is without effect to the extent that it conflicts with federal law.  Fidelity Federal Sav. & Loan Assn v. De La Cuesta, 458 U.S. 141, 153 (1982).  "An actual conflict exists when it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishments and execution of the full purpose and objective of Congress."  Disabilities Rights Center, 143 N.H. at 678 (quotation omitted).  A motor carrier that provides taxicab service under a state or local license would, generally, be exempt from federal regulation.  49 U.S.C. § 13506(a)(2) (exempting taxicab services from federal jurisdiction); 42 U.S.C. § 13902 (detailing how to register as a motor carrier subject to federal jurisdiction).  This exemption, however, is not without limits.  See, e.g., I.C.C. v. Mr. B's Services, Ltd., 934 F.2d 117, 122 (7th Cir. 1991).  The taxicab services exemption does not extend to transportation provided by taxicabs that is not inherently local.  Id.  Once the transportation ceases to be local in nature or the provider bills itself as an interstate service, it falls within the jurisdiction of the Secretary, the STB, and the FMCSA, and the provider must comply with federal law to provide such transportation.  See id.; see also Miller, 360 F. Supp. at 1171 (concluding that a taxicab service cannot hold itself out as providing interstate transportation without securing the necessary licenses from the federal government).  Accordingly, a taxicab service can be subject to local regulation and still fall within the jurisdiction of the FMCSA.

Thus, the defendants' FMCSA certification provides them with the authority to carry passengers in interstate commerce, but it does not authorize them to provide purely intrastate services that are unrelated to their interstate

5

services.  See Funbus Systems, Inc. v. C.P.U.C., 801 F.2d 1120, 1122, 1129 (9th Cir. 1986) (concluding that certificate issued by Interstate Commerce Commission to operate in interstate commerce grants a limited authority to operate along the same routes in intrastate commerce but does not grant the certificate holder free rein to operate wholly unrelated intrastate services); East West Resort Transp., LLC v. Binz, 494 F. Supp. 2d 1197, 1200 (D. Colo. 2007) (noting that for intrastate transportation to qualify as interstate service subject to federal regulation, thereby preempting regulation by the state, it "may not operate independently of the interstate service, but instead must be conducted as part of existing interstate service" (quotation omitted)).  Federal law and certification do not function as a shield to prevent the enforcement of local regulation when the nature of the service provided is intrastate and unrelated to the interstate services protected under federal law.  See Trans Shuttle v. Public Utilities Com'n, 89 P.3d 398, 400 n.3, 404 (Colo. 2004) (concluding that federal law preempts local regulatory authority only with respect to a motor carrier's intrastate passenger transportation on same routes over which it provides interstate transportation; intrastate activities that are independent of the interstate activities are subject to local regulation).

Because the defendants have not shown that they cannot comply with the requirements of both federal law and the City Ordinances, they have failed to demonstrate that state and federal law actually conflict.  See Disabilities Rights Center, 143 N.H. at 678.  Accordingly, we conclude that the trial court erred in dismissing the case.  If the trial court concludes that the defendants' transportation service falls within the scope of the City Ordinances, they must comply with the requirements of those ordinances.[1]

Finally, the defendants assert that the determination "of whether their business activity falls within the authority granted to them by their federal certificate requires the special competence of the issuing authority."  They appear to argue that the primary jurisdiction doctrine justifies a stay of the court proceedings and a determination of the issue by the FMCSA in the first instance.  See Reiter v. Cooper, 507 U.S. 258, 268 (1993) (noting that the primary jurisdiction doctrine requires a trial court "to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling," particularly where the claim "contain[s] some issue within the special competence of an administrative agency").  However, as the State points out, the City's enforcement action does not "challenge the defendants' compliance with their federal operating authority"; rather, the dispositive issue here is whether the defendants' activities constitute a taxicab service under the City Ordinances.  Because this is not an issue within the special competence of the FMCSA, the primary jurisdiction doctrine is inapplicable.

---

[1] Because we so conclude, we need not address the defendants' argument that the Manchester Ordinances unconstitutionally burden interstate commerce.

6

For all of the foregoing reasons, we conclude that the trial court erred in dismissing the State's charges.

<u>Reversed and remanded</u>.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.