**INTERSTATE COMMERCE COMMISSION**

**v.**

**Sam H. MILLER.**

**Civ. A. No. 73-114.**

United States District Court,
D. New Hampshire.

July 17, 1973.

J. F. Walker, Esq., Regional Counsel, I.C.C. Bureau of Enforcement, Boston, Mass., for plaintiff.

Alvin E. Taylor, Taylor & Gray, Portsmouth, N. H., for defendant.

## OPINION

BOWNES, District Judge.

This is an action brought by the Interstate Commerce Commission (hereinafter I.C.C.) to permanently enjoin alleged violations of 49 U.S.C. §§ 303(c),[1] 306(a),[2] and 309(a).[3] Jurisdiction is based on 49 U.S.C. § 322(b)(1).

The issue in this case is whether or not the taxicab operations performed by the defendant between the general area of Portsmouth, New Hampshire, and Logan Airport in Boston, Massachusetts, are beyond the scope of the taxicab exemption under 49 U.S.C. § 303(b)(2)[4] and, therefore, should be enjoined by the I.C.C.

A preliminary injunction restraining the defendant from engaging in the for-hire transportation of passengers, in taxicab operations, in interstate com-

1. 49 U.S.C. § 303(c) provides in pertinent part as follows:

. . . no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway . . ., unless there is in force with respect to such person a certificate or a permit issued by the [Interstate Commerce] Commission authorizing such transportation, . . . .

2. 49 U.S.C. § 306(a) provides in pertinent part as follows:

. . . no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operations on any public highway, . . ., unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the [Interstate Commerce] Commission authorizing such operations: . . . .

3. 49 U.S.C. § 309(a) provides in pertinent part as follows:

. . . no person shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway . . . unless there is in force with respect to such carrier a permit issued by the [Interstate Commerce] Commission, authorizing such person to engage in such business: . . . .

4. 49 U.S.C. § 303(b)(2) provides in pertinent part as follows:

Nothing in this chapter, . . . shall be construed to include . . . (2) taxicabs, or other motor vehicles performing a bona fide taxicab service, having a capacity of not more than six passengers and not operated on a regular route or between fixed termini; . . . .

merce in violation of 49 U.S.C. §§ 303(c), 306(a), and 309(a) was issued on June 1, 1973. A hearing on plaintiff's prayer for a permanent injunction was held on July 6, 1973.

### FACTS

■ Defendant has operated a taxicab business in the Portsmouth, New Hampshire, area under the name A–1 Taxi for some sixteen years. He presently owns two taxicabs, and his wife owns a third cab. These taxicabs, have a maximum passenger capacity, excluding the driver, of five. Sam Miller does most of the driving while his wife acts as radio dispatcher. There is one other full-time driver for A–1 Taxi. The defendant possesses a municipal taxi permit from the City of Portsmouth and has an exclusive contract with the Department of Defense to provide on-base taxi service to military personnel stationed at Pease Air Force Base, Portsmouth, New Hampshire. This contract which expires in 1974, of course, does not override or nullify the provisions of the Interstate Commerce Act.

Miller advertises his taxi business in several ways. He has business calling cards which list military rates on one side and civilian rates on the order. Pl. Ex. 1. On the side of the card showing the taxi fare schedule for military personnel, there appears the following information:

> Pease to Boston (4 or more)
>
> Including Luggage    $7.00 each

Ask about our family plan to Boston? Miller also uses yellow stickers which are placed in phone booths and other places to advertise his taxi business. These stickers (Pl. Ex. 3) contain the following language:

### WE MAKE TRIPS TO LOGAN AIRPORT AND BOSTON

In addition, the defendant advertises in military newspapers. An issue of *The Viking* (Pl. Ex. 2) dated January 26, 1973, contains one of the defendant's ads which provides as follows:

### LOW FAMILY RATES TO LOGAN
### *    *    *    *
### DAILY TRIPS TO LOGAN AIRPORT

The *Seacoast Flyer* (Pl. Ex. 6) also contains ads which indicate that A–1 Taxi makes trips to Logan Airport in Boston.

Between January 1, 1973 and May 31, 1973, A–1 taxis have made thirty-two trips from Portsmouth, New Hampshire,. to either Boston or Logan Airport. A–1 Taxi has received a total of $823.00 for these trips. The fare for military personnel to Boston is $25.00 for one to three passengers or $7.00 per person for four or more. Civilian rates to Boston are higher. The distance from Pease Air Force Base to Boston is slightly in excess of fifty miles.

Miller testified that he has no fixed schedule for going to Boston or Logan Airport and that he does not make daily trips. He only goes to the Boston area when a passenger requests it. Miller testified that he never seeks return passengers from the Boston area and that he always returns to the Portsmouth area without passengers.

There are approximately thirty taxicab permits issued by the City of Portsmouth. It is common practice for all of the taxicabs in Portsmouth to take passengers to Boston or Logan Airport when requested.

There are two modes of public transportation between Portsmouth and Boston. Public buses travel from Portsmouth to Boston, and the C. & J. Cab Company operates an I.C.C. licensed limousine service between Dover, New Hampshire, and Boston-Logan Airport. C. & J. operates on a fixed schedule and runs eight daily limousines from Dover to Boston with intermediate pick-up points at Portsmouth, Pease Air Force Base, and Hampton. The fare for the limousine is $10.00 one way to Boston and $17.00 round trip.

### FINDINGS AND RULINGS

The plaintiff contends that the interstate taxicab operations of the defendant

are beyond the scope of the taxicab exemption and that appropriate authority is required from the I.C.C. in order for the defendant to lawfully engage in for-hire transportation between Portsmouth, New Hampshire, and Boston, Massachusetts. The defendant contends that his taxi operations are within the taxicab exemption, 49 U.S.C. § 303(b)(2).

Part II of the Interstate Commerce Act, involving the regulation of motor carriers, was initially enacted in 1935. The taxicab exemption, 49 U.S.C. § 303(b)(2), was part of the initial enactment and has remained unchanged. It is uncontroverted that the defendant has never held a certificate of public convenience and necessity, a permit, or any other form of authority from the I.C.C. authorizing the transportation of passengers in interstate commerce for compensation.

▆▆▆ Since the Interstate Commerce Act is remedial, and is, therefore, to be liberally construed, it has consistently been held that the provisions of the Act dealing with exemptions are to be narrowly construed and are to be extended only to those carriers plainly within its terms. *See, e. g.,* McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164 (1938).

▆▆ 49 U.S.C. § 303(b)(2) partially exempts from I.C.C. regulation "taxicabs, or other motor vehicles performing a bona fide taxicab service, . . . ." Although the plain meaning of this statute would seem to encompass the defendant's taxi operations, the I.C.C. has interpreted the phrase "bona fide taxicab service" to mean local operations within a municipality and its immediate environs, Whitman's Black and White Cab Company, Inc., Common Carrier Application, 47 M.C.C. 737 (1948), and contends that the defendant's taxi operations are without the exemption because they are not strictly local and, therefore,

not bona fide. However, a literal reading of the statute negates the I.C.C.'s contention because the phrase "bona fide taxicab service" only modifies "other motor vehicles" and not "taxicabs." The fact that a comma is used to separate "taxicabs" from "other motor vehicles performing a bona fide taxicab service" is indicative of Congressional intent to exempt from I.C.C. regulation *all* taxicabs which "hav[e] a capacity of not more than six passengers" and which are "not operated on a regular route or between fixed termini."

Even if the I.C.C.'s interpretation of 49 U.S.C. § 303(b)(2) were correct, the determination of what constitutes "bona fide taxicab service" can only be made on an *ad hoc* basis. In Korkean Dulgerian, Common Carrier Application, 53 M. C.C. 385 (1951), the Commission stated:

> No rigid formula can or should be established. Each case must be decided on its own merits and in accordance with the circumstances presented therein, taking into consideration such factors as the size and population of the base city or town and the extent of the development of nearby or suburban communities, as well as the distance involved. At page 388.

In still another Commission proceeding on the same issue, D. & M. Taxi Co., Inc., Common Carrier Application, 96 M.C.C. 439 (1964), the Commission stated:

> The establishment of a rigid mileage limit beyond which an operation will not be considered a bona fide taxicab service is neither necessary nor desirable. At page 445.

▆▆ In the case at bar the defendant does not take passengers to the Boston area on a daily basis nor does he derive a substantial part of his revenue from such trips.[5] The defendant's taxicab operations to the Boston area can be fairly characterized as one-way service; he

---

5. From January 1, 1973 through May 31, 1973, the defendant's taxi operations have

grossed $10,649.38. Of this sum, $823.00 have come from trips to the Boston area.

does not maintain telephone or terminal facilities in Boston, and, ordinarily, does not expect to obtain any traffic originating there. Taking into consideration the need of military servicemen, especially transients, for transportation to the Boston area, the fact that the defendant operates under an exclusive contract with the Department of Defense to provide taxi service to the military personnel at Pease Air Force Base, the fact that the distance from Pease Air Force Base to Boston is slightly in excess of fifty miles, the frequency of the defendant's interstate taxicab operations,[6] the alternative transportation that is available in the Portsmouth area for travel to Boston, and the size and population of the City of Portsmouth,[7] I find that the defendant's taxicab service is primarily local in nature. Accordingly, I rule that the defendant's transportation of passengers to the Boston area falls within the taxicab exemption and, therefore, should not be enjoined. This ruling is based on the finding that the defendant only goes to Boston when specifically requested by passengers.

The advertising of interstate taxi service by the defendant, however, stands on a different footing. The defendant cannot hold himself out to the general public as providing interstate taxicab service to the Boston area without securing the necessary permits from the I.C.C. Accordingly, the defendant is permanently enjoined from any and all advertising which purports to hold himself and/or his company out as providing transportation of passengers by motor vehicle for compensation to the Boston area, including Logan Airport.

An injunction shall issue forthwith.

So ordered.

6.  The defendant's taxi service made thirty-two trips to the Boston area in the first five months of 1973 or somewhat less than two trips per week.

7.  The City of Portsmouth has a land area of 15.2 square miles and had a 1972

resident population of 20,225. These figures were obtained from the Office of Comprehensive Planning, State of New Hampshire.