**Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**BREWAH CAB, INC., a Corporation, Daniel Brewah, an Individual and Diane Brewah, an Individual, Defendants.**

**No. 96–C–499.**

United States District Court, E.D. Wisconsin.

Feb. 3, 1998.

Tracie R. Porter, U.S. Department of Labor, Office of Sol., Chicago, IL, for Plaintiff.

F.M. Van Hecke, Van Hecke Law Offices, Chartered, Milwaukee, WI, for Defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On April 26, 1996, the plaintiff, the Secretary of Labor for the United States Department of Labor ["the Secretary"], filed an action in this court alleging that the defendants violated the provisions of sections 7, 11 and 15 of the Fair Labor Standards Act of 1938 ["FLSA"], 29 U.S.C. § 201 et seq., by failing adequately to compensate their employees in accordance with the overtime provisions of the FLSA and by failing to keep accurate records of employees and the wages and hours they worked. The complaint seeks a permanent injunction as well as recovery of unpaid back wages which are allegedly due the defendants' employees. In their

amended answer, the defendants assert, as an affirmative defense, that they are exempt from the overtime provisions of the FLSA because the corporate defendant, Brewah Cab, is a taxi company under 29 U.S.C. § 213(b)(17).

A court trial was scheduled to commence in this case on July 14, 1997. By order of June 23, 1997, the court granted the parties' "Joint Motion to Cancel Trial and Set Briefing Schedule for Cross Motions for Summary Judgment." As a result, the court trial was adjourned and a briefing schedule in connection with the parties' cross motions for summary judgment was established. The issues are now fully briefed.

## I. STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. See Rule 56(c), Federal Rules of Civil Procedure. Under Rule 56(c), the movant must show the following: (1) no genuine issue of material fact exists, and (2) its entitlement to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In their joint motion to cancel trial and set summary judgment briefing schedule, the parties agreed that there are no genuine issues of material fact in this case. Pursuant to their motions for summary judgment, the parties ask the court to determine (1) whether the defendants improperly withheld overtime in violation of the FLSA, and (2) whether Brewah Cab is engaged in the business of operating taxicabs within the meaning of the exemption set forth in 29 U.S.C. § 213(b)(17).

## II. FACTUAL BACKGROUND

The following uncontested facts are germane to my resolution of the pending motions for summary judgment. Brewah Cab

is a Wisconsin corporation with its principal place of business in Milwaukee. Daniel Brewah, a resident of Wisconsin, is responsible for and exercises direct control over all aspects of the operation of Brewah Cab. Mr. Brewah is a shareholder, director and the president of Brewah Cab. As such, Mr. Brewah is responsible for the personnel decisions of Brewah Cab, including, but not limited to, decisions regarding hiring and firing and general personnel policies.

Diane Brewah is married to Mr. Brewah and also resides in Wisconsin. She is a shareholder and the vice-president of Brewah Cab and acts as the office manager for the corporation. Her position requires that she act directly in the interest of Brewah Cab in relation to its employees.

Brewah Cab is an enterprise within the meaning of section 3(r) of the FLSA and was engaged in the business of transporting elderly persons and persons with handicaps in specialized motor vehicles. Drivers would transport persons on a round-trip or one-way basis within Milwaukee County.

Brewah Cab had two or more employees handling goods or materials that have been moved in or produced for commerce by any person within the meaning of section 3(s)(1)(A) of the FLSA. In operating their business, the defendants did the following: (1) purchased Chevrolet, Ford, Dodge and Chrysler vehicles; (2) purchased tires for their vehicles from "Sam's Club" and office equipment from "Office Max"; (3) equipped their vehicles with Motorola two-way radios; (4) hired employees who worked as mechanics to make repairs to their vehicles; and (5) required their drivers to fuel the company vehicles. All of the vehicles used in the defendants' business were solely owned by Brewah Cab.

The "Aerostar minivans" and "half-ton vans" used by the defendants in their business were all equipped with wheelchair lifts, ramps, restraints, first-aid kits and fire extinguishers. The maximum capacity in the station wagons and minivans was three people. The half-ton vans held a maximum of two wheelchairs and two individuals. The name "Brewah Cab, Inc.," the corporation's telephone number and a city inspection sticker appear on all of the defendants' vehicles. None of the vehicles contains a taximeter.

The defendants establish their own rates which are filed with the City of Milwaukee and posted on the dashboard of their vehicles. The defendants' rates are determined on a mileage basis and range from $33 (for 1–10 miles) to $93 (for 29 to 30 miles). An extra charge is assessed for large customers, stairs and the presence of a second attendant to assist the passenger. Drivers are not allowed to receive tips.

The defendants maintain a customer list containing the name, address and phone number of each customer. The work schedules of the drivers are prepared by the defendants. Depending on the workload, drivers may work 8, 10 or 12 hours a day, and the type of shift a driver works is determined on a day-to-day basis. A daily schedule of passengers who are to be transported is given to the drivers. The daily schedule identifies who is to be given service, at what time the service is to be provided and the desired destination. The dispatcher may assign additional work to a driver throughout the day.

Persons requesting transportation from Brewah Cab must call into the corporations' office to prearrange the services. While drivers do not operate on fixed routes, they are not permitted to pick up passengers who have not prearranged services.

Typically, more than one passenger is transported in the defendants' vehicles at a given time. Door-to-door services are provided to passengers, but the drivers are not allowed to wait for passengers at their homes or destinations. In addition, a courtesy call is given to passengers requesting an early morning trip to ensure that the passenger is ready when the driver arrives. Transportation services are provided by the defendants from 4:30 a.m. to 10:00 p.m. Monday through Sunday, including holidays. The office is open from 8:00 a.m. to 4:30 p.m. Ms. Brewah has a two-way radio at her residence to handle any calls received after the office is closed and a 24–hour answering service also handles after hour calls.

The defendants permit recurrent passengers to have standing orders for services.

Drivers are permanently assigned vehicles and are permitted to take the vehicles home although they are not allowed to drive them for their personal use.

Between May 1, 1993, and May 31, 1995, 25 drivers were employed by the defendants. The drivers are required to have a public passenger driver's license and receive training in cardiopulmonary resuscitation (CPR) and handling of seizures. In addition, drivers are trained in customer assistance, wheelchair handling, fastening of seatbelts and loading and unloading passengers. Drivers are not hired until they successfully complete the training. An employee handbook is published for employees and written policies and procedures are distributed to employees.

The defendants advertise their business through word of mouth, the yellow pages of the phone book, business cards and personal contact. Their advertisement in the yellow pages is under the heading of "transportation services for the disabled" not under the heading of "taxicabs."

The City of Milwaukee licensing division issues four types of public passenger vehicle licenses: taxicabs, livery, operated handicapped elderly, shuttles and luxury limousines. From May 1993, through May 1995, 28 of defendants' vehicles were licensed as handicapped elderly vehicles, 5 as shuttles and none as taxicabs.

Mr. Brewah, on behalf of Brewah Cab, entered into a contract dated April 1, 1993, with the State of Wisconsin Department of Health and Social Services, Wisconsin Medical Assistance Program, also known as the "Title 19 program," for the purpose of providing transportation services to state Medicaid recipients. Under the Title 19 program, participants in the program could only be taken to medical related appointments. This contract was canceled by the State of Wisconsin in December 1996.

Mr. Brewah, on behalf of Brewah Cab, entered into a contract, dated December 13, 1993, with Milwaukee County, Department of Public Works, Paratransit Services (also known as the User Side Subsidy Program or Transit Plus) ["USSP"], to provide transportation services for participants in the USSP program. Pursuant to the contract, the defendants agreed to provide services to USSP participants over a period of about 5 years. Participants in the USSP program need supervision or extra care because they are elderly, wheelchair bound or have disabilities such as visual impairment, multiple sclerosis or mental disorders.

Under the USSP contract, participants were required to pay a copayment of the cost of transportation and the program paid the difference up to a certain dollar amount. USSP participants paid the co-payment directly to drivers in cash or check or defendants directly billed the person. Defendants submitted vouchers to USSP in order to receive the subsidized amount for the services provided.

Pursuant to the USSP contract, the defendants were restricted to transporting participants within the Milwaukee County area. The USSP contract required that only vehicles which were licensed by the City of Milwaukee as either taxicabs or wheelchair-accessible handicapped elderly vehicles, or by the State of Wisconsin as wheel-chair accessible Human Service Vehicles could be used in performance of the contract.

According to the USSP contract, the defendants identified their vehicles as being licensed by the City of Milwaukee as wheelchair-accessible handicapped-elderly vehicles and identified themselves as a handicapped-elderly vehicle service.

Forty-five percent of the standing orders are from Title 19 or USSP passengers. In addition to the Title 19 and USSP programs, the defendants have provided transportation services through contracts held with other entities, including, the Midwest Dialysis Center, Westside Day Care Center, REN Center, Luther Manor Adult Day Care and Milwaukee Kidney Center.

The Wage and Hour Division of the United States Department of Labor ["DOL"] conducted an investigation for compliance with the FLSA which covered a period from May 1, 1993, through May 31, 1995. Brewah Cab's annual gross volume of sales or business done in 1993 was $1,601,013, in 1994 was $2,032,707, and in 1995 was $2,015,496. As a

result of the DOL investigation, the defendants conducted a self-audit in July 1995 under the direction and supervision of the DOL. The audit revealed that from May 1, 1993, through April 30, 1994, the defendants paid overtime only for hours in excess of 80 in a two-week compensation period. Defendants did not pay overtime for hours worked over 40 in a work week if the overtime hours did not exceed 80 in a two-week period.

Beginning in March 1994, the defendants paid overtime compensation at 1½ times the regular wage rate for hours worked in excess of 80 hours up to 100 hours. For a two-month period beginning in March 1994, when hours exceeded 100 in a two-week compensation period, employees were compensated at the straight regular rate of pay for those excess hours instead of a 1½ times the regular wage rate. In July 1995, during the defendants' self-audit period, the defendants converted to paying overtime for all hours in excess of 40 in a work week at 1½ times the regular rate of pay pursuant to 29 U.S.C. § 207(a)(1) of the FLSA.

As a result of defendants' failure to pay overtime compensation at 1½ times the base wage rate, 108 employees, unless exempt under 29 U.S.C. § 213(b)(17) of the FLSA, are due overtime back wages in the total amount of $54,050.55. It is uncontested that of the 108 employees, the defendants owe overtime back wages in the amount of $15,450.49 to the 16 employees who are classified as non-drivers. However, as to the other 92 employees who are classified as drivers, the defendants are only liable for the remaining $38,600.06 if the exemption from the overtime provisions of the FLSA under § 213(b)(17) does not apply.

### III. LAW AND ANALYSIS

■ Under the FLSA, an employer is prohibited from employing an employee:

for a workweek longer than forty hours unless such employee receives compensation for his employment ... at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA exempts from the overtime provisions "any driver employed by an employer engaged in the business of operating taxicabs." 29 U.S.C. § 213(b)(17). Exemptions from coverage under the FLSA are to be narrowly construed, *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945), and the employer bears the burden of proving the application of an exemption, *Klein v. Rush–Presbyterian–St. Luke's Medical Center,* 990 F.2d 279, 283 (7th Cir.1993).

■ The defendants concede that, unless the "taxicab exemption" under § 213(b)(17) applies, they are jointly and severally liable for back wages for overtime compensation with respect to 108 of their employees. However, if the exemption is applicable, they are not obligated to pay back wages for overtime with respect to the 92 persons who were employed as drivers.

None of the parties has pointed to any controlling case law interpreting the taxicab exemption under § 213(b)(17) from the United States Supreme Court or the court of appeals for the seventh circuit, and the court's own research has not uncovered any. Instead, the parties focus on two cases interpreting the exemption from other circuits. In *Airlines Transp. v. Tobin,* 198 F.2d 249 (4th Cir.1952), the court of appeals for the fourth circuit was asked to determine whether a corporation which provided airline passengers with transportation by limousines between points in Raleigh and Durham, North Carolina was entitled to the "taxicab" exemption under § 213(b)(17). The court held that the employer was not entitled to the exemption. In reaching this conclusion, the court of appeals noted the following differences between the corporation's business of transporting airline passengers by limousine and the business of operating taxicabs:

The limousines in transporting passengers to and from the airport are required to follow and may not depart from fixed and limited routes on a definite schedule between beginning and ending points which are fixed in advance without reference to the convenience of a particular passenger; and the arrangement is made under a contract with interstate air carriers to facilitate their interstate business. The taxicabs, on the contrary, operate without

fixed routes or schedules and are at the service of the individual customer as to time and destination in order to serve his personal convenience.

\* \* \*

It may be added that the working conditions of the employees in the two types of business differ in important respects. To a large extent taxi drivers are free to organize their own time and to select their own routes, and they are required to exercise considerable initiative to secure the necessary patronage; but the limousine drivers do the work laid out for them at a point of time upon specified routes.

*Id.* at 252.

Following an analysis similar to the one employed in *Airlines Transp.*, the court of appeals for the sixth circuit in *Wirtz v. Cincinnati, Newport & Covington Transp. Co.,* 375 F.2d 513 (6th Cir.1967), concluded that the defendants, which transported passengers from the Cincinnati airport in four-passenger sedans called "Red Tops," were not in the business of operating taxicabs within the meaning of the exemption under § 213(b)(17). In arriving at this conclusion, the court of appeals was persuaded by the following factual findings made by the district court:

> The Red Tops have certain attributes of a regular taxicab in that they are of a four-passenger capacity and do not operate over fixed routes according to a predetermined time schedule. However, all trips must either originate or terminate at the airport, the Red Tops are used for the sole purpose of providing ground transportation to and from the airport and their use by the general public is restricted to those traveling to and from said airport. The Red Tops are unmetered, do not have vacancy signs and are not advertised as taxicabs. They stand and wait for passengers only at the airport.

> \* \* \*

> The drivers of the cars are not free to organize their own time and use little or no initiative in securing passengers. The number of drivers on duty at any given time is determined by the defendants in advance by use of schedules of arrivals and departures of airplanes secured from the various airlines . . . .

*Id.* at 514–515. In addition, the court of appeals distinguished the Red Top operation from a regular taxicab operation on the ground that the Red Tops "clearly function under 'a contract with interstate air carriers to facilitate their interstate business.'" *Id.* at 515, (citing *Airlines Transp.,* 198 F.2d at 252). The court of appeals acknowledged that, unlike the limousines in *Airlines Transp.,* the Red Tops did not follow regular schedules and routes. Nevertheless, the appellate court in *Wirtz* did not believe that fact was vital when balanced against the remaining facts.

The plaintiff argues that the business operated by Brewah Cab is substantially similar to the businesses in *Airlines Transp.* and *Wirtz* and, therefore, should not qualify as a taxicab company. The defendants recognize that its business may be distinguishable from that of many taxicab companies. However, they contend that those distinctions are a result of the fact that its customer base is the handicapped and elderly and, in all respects cited as relevant by the courts in *Airlines Transp.* and *Wirtz,* it is a taxicab company.

It is true that the defendants' business has some attributes in common with a typical taxicab company. For instance, the defendants' business does not operate over fixed routes, it posts its rates of fare in each vehicle, and the company allows the passenger to determine the destination of the vehicle. Nevertheless, the defendants' business is different from the operation of a taxicab company in many critical respects. The drivers of defendants' vehicles are required to adhere to a daily work schedule which is prearranged by the defendants and/or dispatcher, not the individual drivers. While drivers may not be required to return to the "base of operations" in between scheduled appointments, they are not free to pick-up passengers who have not prearranged services nor are they permitted to wait for passengers at their homes or destinations. Typically, more than one passenger is trans-

ported at a time. The defendants' vehicles are unmetered, do not have vacancy signs and are not advertised as taxicabs. Unlike the defendants' transportation service, taxicab companies do allow their drivers to pick up passengers at their discretion, usually transport one fare at a given time, and do not operate on prearranged schedules.

The defendants' involvement in various subsidy programs also distinguishes it from a taxicab company. In general, taxicab operations receive 100% of the fare from the passenger himself or herself and do not participate in any program which provides a co-payment of the cost of transportation or limits the area in which the passenger may be transported. Moreover, unlike the defendants' drivers, most taxicab drivers are not precluded from receiving tips.

Another factor which weighs against a finding that the defendants' business qualifies for the taxicab exemption is the fact that Brewah Cab is not licensed by the City of Milwaukee as a taxicab company. Instead, the defendants' vehicles are licensed as "handicapped elderly vehicles." As such, the defendants' vehicles are equipped to accommodate wheelchairs and drivers of those vehicles must take additional training on handling and loading wheelchairs and assisting elderly and handicapped passengers.

The defendants' assertion that the court should disregard the distinctions between their operation and that of a typical taxicab service because such distinctions exist only because their services are directed to a special segment of the population misses the point. The unique characteristics of the defendants' operation are exactly the factors that this court must consider in determining whether its operation was contemplated by Congress when it created the narrow exemption for taxicab companies under § 213(b)(17).

The defendants have not persuaded the court that their business falls within the narrow taxicab exemption to the overtime provisions of the FLSA. The nature of the defendants' business, the working conditions of the drivers and the licensing scheme under which the defendants operate all weigh against a finding that the defendants' business is that of a taxicab company under § 213(b)(17). Thus, the defendants are subject to the overtime provisions of the FLSA as set forth in 29 U.S.C. § 207(a)(1). The plaintiff is entitled to a judgment for unpaid overtime compensation in the amount of $54,050.55 which represents unpaid overtime compensation of $38,600.06 to defendants' driver employees and unpaid overtime compensation of $15,450.49 to defendants' nondriver employees.

As an additional matter, the plaintiff also asks this court to enter a permanent injunction pursuant to 29 U.S.C. § 217 enjoining the defendants from future violations of the statute and from withholding back wages due their employees. The defendants argue that such an injunction is not necessary because they are presently complying with the requirements of the FLSA.

■ The FLSA provides district courts with jurisdiction to restrain violations of the statute. 29 U.S.C. § 217. An injunction can be granted under the FLSA if the Secretary of Labor has established violations of the statute. *Brock v. Lauritzen,* 649 F.Supp. 16, 18 (E.D.Wis.1986) (citing *Hayes Bros., Inc. v. Economy Fire & Casualty Co.,* 634 F.2d 1119 (8th Cir.1980)), *aff'd,* 835 F.2d 1529 (7th Cir. 1987). In addition, it is appropriate to award an injunction when there are inadequate assurances that a party subject to the provisions of the FLSA will comply with the statute in the future. *Lauritzen,* 649 F.Supp. at 18 (citing *Dunlop v. Davis,* 524 F.2d 1278 (5th Cir.1975)).

■ In considering whether to grant an injunction, one of the factors the district court should look at is evidence of current compliance. *Brock v. Big Bear Market No. 3,* 825 F.2d 1381, 1383 (9th Cir.1987). However, current compliance alone, especially where it is achieved by direct scrutiny of the government, is not a sufficient ground for denying injunctive relief. *Id.* (citing *Dunlop,* 524 F.2d at 1281).

As stated above, the defendants have been found to have violated the overtime provisions of the FLSA as identified in 29 U.S.C. § 207(a)(1). The only evidence provided by the defendants that future violations will not occur is the fact that they are currently in

compliance with the FLSA. Yet, it is undisputed that such compliance came only after the government initiated its investigation into the overtime violations. I find that the defendants have not presented sufficient assurances that they will comply with the FLSA in the future. Thus, the better exercise of my discretion warrants that the issuance of an injunction to restrain future violations of the overtime provisions of the FLSA.

Therefore, IT IS ORDERED that the plaintiff's motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the defendants be and hereby are permanently enjoined from violating 29 U.S.C. § 207(a)(1).

IT IS FURTHER ORDERED that the defendants' motion for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that, pursuant to Rule 58, Federal Rules of Civil Procedure, the Clerk of Court be and hereby is directed to enter a judgment in favor of the plaintiff requiring the defendants to pay $54,050.55 in unpaid overtime back wages to their employees, with costs in favor of the plaintiff.