Enzo CARIANI, Plaintiff,

.v.

**D.L.C. LIMOUSINE SERVICE, INC. Defendant.**

**No. 03 CIV. 8383(CM).**

United States District Court, S.D. New York.

March 29, 2005.

Robert David Goodstein, Goodstein & West, Esqs., New Rochelle, NY, for Plaintiff.

Jeffrey I. Carton, Meiselman, Farber, Packman & Eberz, P.C., White Plains, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

MCMAHON, District Judge.

The instant cross-motions for summary judgment present what appears (surprisingly) to be an issue of first impression in this Circuit: whether car services similar to those that thousands of customers—including every major law firm in the metropolitan area—use in lieu of cruising, metered taxicabs for local transportation are required to pay time and a half to their drivers after forty hours of work each week, or whether they are statutorily exempt from the maximum hours rule enshrined in the Fair Labor Standards Act ("F.L.S.A."), 29 U.S.C. § 207, for either of two reasons.

Plaintiff is a driver who was employed by defendant D.L.C. Limousine Service, Inc. ("D.L.C.") from October 23, 2000 to September 19, 2003. D.L.C. runs a car or limousine service out of a location at the Westchester County Airport. Plaintiff alleges that he earned $7.00 per hour plus commissions of between nine and ten percent. He further alleges that he worked more than forty hours per week but was not paid overtime wages for the hours over forty he worked.[1]

D.L.C. asserts that it is a taxicab operator, and as such is entitled to the benefit of a statutory exemption from the maximum hours rule of § 207. Section 213(b)(17) of the F.L.S.A. provides that § 207 "shall not apply with respect to... (1) any driver employed by an employer engaged in the business of operating taxicabs." Alternatively, defendant contends that—if it is not operating taxicabs—it is nonetheless exempt under Section 213(b)(1), which provides that the F.L.S.A. does not apply "to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" (the so-called "motor carrier exemption" to the F.L.S.A.). Defendant insists that it is entitled to either one exemption or the other, and thus that the complaint must be dismissed for lack of subject matter jurisdiction.

Plaintiff insists that D.L.C. is not a bona fide taxi service, but something else—a limousine company—and is thus not comprehended within the statutory "taxicab" exemption. Plaintiff argues, however, that defendant is not entitled to the benefit of the motor carrier exemption, either. It opposes the motion to dismiss and seeks summary judgment in its favor on the issue of liability.

The F.L.S.A. does not define the term "taxicab" or "taxicab operator." The Revised Interstate Commerce Act ("R.I.C.A.")—formerly the Motor Carrier

---

1. Plaintiff asserts a pendent state law claim for overtime wages under New York's Labor Law § 198. That claim is not relevant to the instant motion.

Act—does not define the term "bona fide taxicab service," which—as will be seen—comes into play in analyzing the motor carrier exemption. And it appears that there is scant case law on the subject—much of it ancient, none of it emanating from this Circuit.

One thing is clear: whether D.L.C. is in the "business of operating a taxicab" or runs a "bona fide taxicab service" depends on certain key facts. It is thus necessary, before analyzing this issue, to set forth the undisputed facts concerning the business of D.L.C.

### The Facts

The following facts—submitted by defendant in support of its motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and properly considered by the Court on such a motion[2]—are not disputed by plaintiff.

D.L.C. has been in operation in Westchester County since at least the early 1980s. At that time, Westchester County granted D.L.C. a permit to conduct a taxi/limousine service out of leased premises at the Westchester County Airport. The record contains a copy of a 1989 agreement between D.L.C. and the County and a copy of a 2001 agreement between the same parties, which is apparently the most recent such agreement. In each document, the County grants D.L.C. a license (or in the earlier document, a permit) to use space in the Airport: 160 square feet in the 2001 agreement, plus 1200 square feet for curbside parking and 2800 square feet for a vehicle staging area. D.L.C. is permitted to use the Licensed Premises "for the operation of a first class full-service taxi/limousine service for the convenience of travelers, airport users, and the general public." (Reply Affidavit of Chris Thornton, dated January 16, 2004, Ex. H, Sec. 1.2 ("Thornton Reply Aff.").) The 1989 agreement obligated D.L.C. to "conduct taxi and limousine services" at the airport. (Affidavit of Chris Thornton, dated December 18, 2003, Ex. B ("Thornton Aff.").)

D.L.C. maintains a fleet of seven cars. Six of those cars are standard five passenger vehicles (the five passengers includes the driver). D.L.C. also has one Town Car, for which it charges higher rates. The cars are dispatched both directly from the Airport or by telephone when a customer calls to arrange service. None of the cars is metered or has the familiar taxi "vacancy" light on top.

D.L.C. hired drivers who are licensed by the Westchester County Taxi and Limousine Commission, which is charged with regulating the for-hire vehicle industry in Westchester County. Plaintiff was a duly licensed driver.

D.L.C. provides transportation to airports in New York, New Jersey and Connecticut. It operates within a radius of

---

**2.** Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000).

In assessing a motion to dismiss for lack of subject matter jurisdiction, a court must "accept as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Id.* (citing *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). Ultimately, plaintiff carries the burden of establishing that subject matter jurisdiction exists over the complaint. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996); *In re Joint E. & So. Dist. Asbestos Litig.,* 14 F.3d 726, 730 (2d Cir.1993); *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir. 1983).

approximately 100 miles from the Westchester County Airport. It does not run fixed routes or have any pre-determined time schedule; its cars are available to go where customers wish when they wish. All cars are either contracted at the airport or radio-dispatched; none of the seven cars in defendant's fleet cruises the streets for passengers.

■ D.L.C. is required, by the terms of its contract with Westchester County, to engage in an advertising program. (Thornton Reply Aff., Ex. H, Schedule B.) The program requires it to place listings annually in the NYNEX Yellow Pages under the headings "Airport Transportation Services" and "Limousine Services," as well as to place advertisements in local community "Blue Books" in Northern Westchester (as far south as White Plains) and Fairfield County, Connecticut (as far east at Westport and as far north as Ridgefield). D.L.C. is also required to place fliers in local hotels, advertising "ground transportation." Defendant's exhibits do not include any of its advertisements. A glance at the Verizon Yellow Pages for Westchester County reveals that D.L.C. is advertised under "Airport Transportation," but not under "Limousine Service" or "Taxicab." [3]

D.L.C.'s drivers are not allowed to cruise for passengers when they are not otherwise engaged. However, a driver is free to "use initiative to secure patronage by providing high quality service in exchange for tips," which I gather means that the drivers can obtain regular customers. (Defendant's Reply Mem. at 9.)

Arriving passengers can use the services of D.L.C. to transport them from the airport to their destinations. In addition, the general public can call D.L.C. to obtain point to point transportation within Westchester County or to adjacent regions.

D.L.C. maintains a schedule of fares to various locations. As noted above, there is a separate fare schedule for the use of the Town Car. Fares are a function of the distance from the airport. It does not post the schedule in its cars, but does post it at its dispatch location at the Airport and announces them over the telephone when customers call in for service.

D.L.C.'s only contractual arrangement is with Westchester County. It does not have any contractual arrangement with any airline or other carrier or with any customer.

Finally, D.L.C. is regulated by the Westchester County Taxi and Limousine Commission ("WCTLC"), but not as a taxicab operator.

The Westchester County Legislature has created the WCTLC by statute, (Affirmation of Robert David Goodstein, dated March 17, 2005, Ex. 4), and has ceded to that regulatory body the power to regulate the provision of taxi and limousine service within Westchester County. According to the data supplied by plaintiff with the Goodstein Affirmation, D.L.C. holds one license from the WCTLC. It is a "For Hire Base Station Permit" from the WCTLC. (Goodstein Aff. Ex. 2 and Thornton EBT at 9–10.) Pursuant to the Rules and Regulations of the WCTLC, a "base station is a central facility, which dispatches *affiliated* vehicles licensed by [the Taxi and Limousine Commission]." (Goodstein Aff. Ex. 3 at page 4 of 54 (emphasis added).) According to Thornton, D.L.C. maintained what he called "for hire vehicles" that were "attached to the base station." (Thornton EBT at 14.) The record also reveals that D.L.C.'s vehi-

**3.** This Court is permitted to take judicial notice of the phone book as a public document.

*See Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998).

cle permits are not taxi permits, but rather are "for hire" vehicle permits, which are "permit[s] issued by WCTLC to the owner of a for-hire vehicle to allow such vehicle to be dispatched by a base station." (Goodstein Aff. Ex. 3 at 4 of 54). Most significantly, the definition of a "for hire vehicle" expressly excluded taxicabs. "A for-hire vehicle is any motor vehicle used to transport less than twenty (20) passengers who will be charged for such transportation. Taxicabs... are excluded from this definition." (*Id.*)

A "taxicab," by contrast, is separately defined and regulated by the WCTLC. The term "taxicab" was at all relevant times defined as "a motor vehicle... that carries no more than five passengers who will be charged for such transportation *and which is licensed as a taxicab by either a local municipality within Westchester County or by the WCTLC.*" (*Id.* at 5.) [4] It is undisputed that none of D.L.C.'s vehicles has ever been licensed as a taxicab either by the County of Westchester of by any municipality within the county.

**The Legal Standard for Interpreting F.L.S.A. Exemptions**

■ The purpose of the enumerated exemptions to the F.L.S.A. is to exclude employment "of a character or with employees of a class to which application of the provisions of the Act for minimum wages and maximum hours is either impracticable or impossible, or with employees in occupations in which the conditions of labor are regulated by other statutes, or with employees the greater part of whose labor is in intrastate commerce.... The reason underlying each exemption is readily apparent." *Helena Glendale Ferry Co. v. Walling*, 132 F.2d 616, 619 (8th Cir.

1942). Exemptions under the F.L.S.A. are to be narrowly construed, and the burden of proving that employees are exempt falls on the employer. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 396, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

*Section 213(b)(17) The Taxicab Exemption*

Defendant's principal argument is that it is entitled to an exemption from the maximum hours requirement because it is a taxicab operator.

The F.L.S.A. itself does not include any definition of the term "business of operating taxicabs." However, Chapter 24h of the Department of Labor Field Operations Handbook (1999 ed.) does define the term "business of operating taxicabs:"

> 24h01 *"Business of operating taxicabs."* The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation need of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

Defendant argues that its business falls squarely within that regulatory definition.

---

4. In April 2005, additional requirements will be added to this definition, which will limit the "taxicab" designation to vehicles registered with New York State as "taxis" and bearing a "taxi" license plate. While this will become relevant only in the future, I note that D.L.C.'s cars bear "livery" license plates, not "taxi" license plates.

D.L.C.'s cars are small motor vehicles that carry persons and their property to requested destinations, operating without fixed routes or contracts for recurrent transportation. It serves the need for miscellaneous (that is, not regularly scheduled) and predominantly (though not exclusively) local transportation.[5] It makes unscheduled trips to or from transportation terminals as requested by individual passengers—indeed, that is the bulk of its business. And it has a "stand" at the transportation terminal it serves, namely the Westchester County Airport.

Plaintiff's strongest counter-argument is that, under local regulations, D.L.C. is in the business of operating "for hire" cars, not taxicabs. Plaintiff also argues that, under the cases that have addressed the F.L.S.A.'s taxicab exemption, D.L.C. does not qualify as a taxi operator.

There is, unfortunately, a paucity of case law addressing the taxicab exemption. The parties have located only three cases that address the issue—two emanating from Courts of Appeals in other circuits, and one from a district court in Wisconsin. The Circuit cases were decided forty and fifty years ago. None of these cases contains any reference to the definition in the Department of Labor's Field Operations Manual.[6] And none of them has facts identical to our facts.

In *Airlines Transportation v. Tobin*, 198 F.2d 249 (4th Cir.1952), insofar as is relevant, the Secretary of Labor disputed Airlines Transportation's ("AT") claim that it fell under the taxicab exemption. AT, under contract with the three airlines that serviced the Raleigh–Durham airport, maintained several seven-passenger limousines, which it used exclusively to transport airline passengers and their baggage, together with freight, newspapers, airline personnel and property, to and from the Raleigh–Durham Airport. The service was arranged by the airlines, was marketed by the airlines as a convenience to the passengers, and in substantial part was controlled by the airlines. For example, the non-airport destination points were selected by the airlines, not designated by the passengers. The airlines also retained the right to specify the time and place of arrival and departure of AT's vehicles at the airport, the type of vehicle to be used, and the uniform and discipline of the drivers. Trips were purely intrastate.

The Fourth Circuit concluded that AT was not entitled to the benefit of the taxicab exemption in the F.L.S.A.:

> The differences between the business of the appellant and that of a taxicab have already been made apparent. The limousines in transporting passengers to and from the airport are required to follow and may not depart from fixed and limited routes on a definite schedule between beginning and ending points which are fixed in advance without reference to the convenience of a particular passenger; and the arrangement is made under a contract with interstate air carriers to facilitate their interstate business. The taxicabs, on the contrary, operate without fixed routes or schedules and are at the service of the individ-

---

5. "Local" is, of course, a relative term. For this purpose, I am using the Secretary of Transportation's definition of "local transportation," which involves trips of no more than seventy miles. See *Interstate Commerce v. Mr. B's Services, Ltd.*, 934 F.2d 117, 119–20 (7th Cir.1991). The evidence submitted to me this month indicates that D.L.C. makes one or fewer trips of more than seventy miles per calendar month.

6. Neither did the parties' submissions to this Court -at least, not until I asked them to supplement the record with factual information about local taxi operations in Westchester County.

ual customer as to time and destination in order to serve his personal convenience.

It may be added that the working conditions of the employees in the two types of businesses differ in important respects. To a large extent taxi drivers are free to organize their own time and to select their own routes, and they are required to exercise considerable initiative to secure the necessary patronage; but limousine drivers do the work laid out for them at a point of time upon specified routes.

It is true that in certain respects the business of Airlines Transportation is subject to state and municipal control of the North Carolina authorities, as is the business of taxi companies. This fact alone, however, does not alter the essential nature of the appellant's business.
198 F.2d at 249.

In *Wirtz v. Cincinnati, Newport and Covington Transportation Company*, 375 F.2d 513 (6th Cir.1967), the cars in question were four-passenger sedans called "red tops," also functioning under contract with interstate air carriers, whose trips either originated or terminated at the airport. The cars were not metered, did not have vacancy signs, were not advertised as taxicabs. The drivers were not free to organize their own time and they used little or no initiative in securing passengers. The district judge concluded that these cars were not "taxicabs" entitled to the F.L.S.A. exemption; the Sixth Circuit held that this decision was not clearly erroneous.

Finally, in *Herman v. Brewah Cab. Inc.*, 992 F.Supp. 1054 (E.D.Wis.1998), the Secretary of Labor alleged that the taxicab exemption did not apply to a transportation service for the elderly and handicapped, and the district court agreed. In that case, the defendant company operated specialized motor vehicles that transported disabled customers within Milwaukee County. Brewah Cab charged its customers on a mileage basis (like a regular taxicab) and rates were posted on the dashboard of each vehicle (also like a regular taxicab). However, it maintained a list of regular customers and regular passengers who were permitted to place standing orders for services. A daily schedule identified who was to be given service to what destination.

Brewah's drivers worked 8, 10 or 12 hours per day, depending on which customers needed to go where when. A dispatcher assigned additional work to a driver throughout the day. Drivers did not operate on fixed routes, but were not allowed to cruise for passengers or wait for passengers at their homes or destinations. Typically, more than one passenger was transported in a van at a give time.

The business was licensed by the City of Milwaukee, but not as a taxicab service; rather it was licensed as a provider of "handicapped elderly vehicles." Drivers held public passenger driver's licenses; they were also trained in CPR and special customer assistance. The business was listed under the heading "transportation services for the disabled" rather than "taxicab" in the Yellow Pages.

Brewah was, for a time, under contract to the State of Wisconsin Department of Social Services for the purpose of transporting patients to medical appointments. It was also under contract with the Milwaukee County Department of Public Works Paratransit Service. The State paid a portion of the fare for DSS and paratransit passengers.

After noting that the only two cases cited by either side were *Airlines Transportation* and *Wirtz,* the district court con-

cluded that Brewah was not providing a taxi service:

It is true that the defendants' business has some attributes in common with a typical taxicab company. For instance, the defendants' business does not operate over fixed routes, it posts its rates of fare in each vehicle, and the company allows the passenger to determine the destination of the vehicle. Nevertheless, the defendants' business is different from the operation of a taxicab company in many critical respects. The drivers of defendant's vehicles are required to adhere to a daily work schedule which is prearranged by the defendants and/or dispatcher, not the individual drivers. While drivers may not be required to return to the "base of operations" in between scheduled appointments, they are not free to pick-up passengers who have not prearranged services nor are they permitted to wait for passengers at their homes or destinations. Typically, more than one passenger is transported at a time. The defendants' vehicles are unmetered, do not have vacancy signs and are not advertised as taxicabs. Unlike the defendants' transportation service, taxicab companies do allow their drivers to pick up passengers at their discretion, usually transport one fare at a given time, and do not operate on prearranged schedules.

The defendant's involvement in various subsidy programs also distinguishes it from a taxicab company...

992 F.Supp. at 1059–60.

These three cases, taken together, are decidedly unhelpful, because (predictably) they cut both ways. Some of the factors identified in *Airlines Transportation, Wirtz* or *Brewah* suggest that defendant should fit within the taxicab exemption: D.L.C.'s drivers do not cover fixed routes or adhere to fixed schedules; D.L.C. offers its customers door-to-door service with the time of the trip and the destination determined wholly by the convenience of the customer; D.L.C. is not under contract with or the control of any airline or other company. Additionally, D.L.C.'s fares are more or less equivalent to the fares of two taxi companies, Central Taxi and Westchester USA, which operate in the same general area as D.L.C., and are less than the rates charges by recognized limousine services like MTC Limousine and Corporate Coach, Inc., and Red Oak Transportation.[7] (Affidavit of Chris Thornton, dated March 3, 2005, and attached exhibits.)

Other factors augur against such a finding: D.L.C. is not regulated as a taxi company by Westchester's Taxi and Limousine Commission, but rather as a "for hire car" operator, it does not advertise itself as a taxi company; its drivers do not organize their own time or cruise for passengers; although fares are mileage-based they are predetermined, not metered; and the cars sometimes carry more than one fare.

In short, the "balancing of factors" test is does not yield a ready result, especially since some of the factors that plaintiff finds critical are completely inapplicable to taxi service in Westchester County.[8] So I return to the regulators.

---

7. I include this last bit of information since I asked the parties to provide it, but now that I have it I find it of lesser moment than I thought it would be.

8. Plaintiff relies heavily on the fact that D.L.C.'s cars do not "cruise" but this carries little weight with me. Taxicab status is ques-

tion of fact, and the relevant facts should include accurate information about private transportation service in the area actually served, rather than in an area where transportation needs are substantially different. "Cruising" taxicabs are virtually nonexistent in Westchester County, where the vast majori-

Defendant argues that plaintiff's reliance on local regulation is irrelevant. I disagree with defendant's contention. Clearly the local regulatory environment has some relevance; in *Brewah*, for example, the fact that the employer was not regulated as a taxicab company was a salient factor, both for the Secretary of Labor and for the Court.[9]

■ However, when the application of local regulations clashes with a competent federal interpretation of federal law, the local definition must give way. And when the federal agency responsible for administering the F.L.S.A. (or any law) defines a term that is relevant to the administration of that law, its determination is entitled to considerable deference. The F.L.S.A. is a statute of nationwide application. A uniform definition of the term "business of operating taxicabs" devised by the Department of Labor better serves the purposes of a federal labor law than does application of a variety of local definitions, which are practically guaranteed to lead to different results in different parts of the country.

The Department of Labor first adopted Section 24h of the Field Operations Manual relating to the taxicab exemption on August 29, 1974. *See* Field Operations Handbook (FOH), Wage and Hour Division, U.S. Dep't of Labor, Vol. II, Ch. 24.[10] That explains why the definition of "business of operating taxicabs" it is not discussed in *Airlines Transportation* or

*Wirtz.* It is surprising that the Field Operations Manual was not cited in *Brewah.* However, application of the Labor Department's definition to the facts of those cases would have made no difference—the employer still would have been found ineligible for the taxicab exemption, because a significant portion of its business was pursuant to a publicly-subsidized contract for recurrent transportation of handicapped individuals, many of whom were regular passengers taking regularly scheduled trips. The existence of a contract between the transportation service and an interstate air carrier was the determinative factor in *Airlines Transportation* and *Wirtz,* so application of the Labor Department definition would not have changed the result in those cases, either. Significantly, D.L.C.'s business possesses none of the traits that rendered Brewah, Airlines Transportation and the carrier in *Wirtz* ineligible for the taxicab exemption.

In view of the Department of Labor's definition, the nature of D.L.C.'s advertising is not determinative.

Defendant is entitled to the taxicab exemption.

*Section 213(b)(1): The Motor Carrier Exemption*

As an alternative to the taxicab exemption, defendant argues that it is exempt from the minimum hours rule because it is an interstate "motor carrier" whose activi-

---

ty of household have cars, and local cab companies exist primarily to take commuters to and from Metro–North train stations. Were I to give great weight to cruising (or to the presence of a meter, for that matter), most of the companies that are regulated as "taxi" companies by WCTLC would not qualify as taxi operators for F.L.S.A. purposes. That would indeed be a peculiar, not to say untenable, result.

**9.** Significantly, *Brewah* was decided in 1998, at which time the definition of "business of

operating taxicabs" was part of the Department of Labor's Field Operations Manual. (See discussion infra., at 14).

**10.** LEXIS appears to be the only legal search engine providing access to this material, which can which can be retrieved by entering "FOH 2.24h" in the citation field. The Field Operations Handbook is also available on the Department of Labor's website, *http:// www.dol. gov/esa/whd/FOH/ index.htm.*

ties (including labor regulations pertaining to its drivers) are subject to the exclusive regulation of the Secretary of Transportation. The exemption here relied on is Section 213(b)(1) of the F.L.S.A., which provides that Section 207 of that statute does not apply "to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1).

A "motor carrier" is a person who provides motor vehicle transportation for compensation. 49 U.S.C. § 13102(12). Generally, the Secretary has jurisdiction over motor carriers that transport passengers "between a place in a State and a place in another State." 49 U.S.C. § 10521(a)(1)(A).[11] However, the R.I.C.A., 49 U.S.C. §§ 10101 *et seq.*, exempts from regulation by the Secretary of Transportation, "a motor vehicle providing taxicab service and having capacity of not more than 7 passengers and not operated on a regular route or between specified places." 49 U.S.C. § 10526(a)(2). Thus, if D.L.C.'s cars (none of which carries more than seven passengers or operates on a regular route or between specified places) are providing something called "taxicab service," then the defendant is not entitled to the motor carrier exemption under the F.L.S.A.

Because I have concluded that D.L.C. falls within the definition of the "business of operating taxicabs" as set forth by the Department of Labor in its Field Operations Manual, it is not necessary for me to reach this issue. But should I be wrong about the taxicab exemption, then I would

have to conclude that defendant was entitled to the motor carrier exemption.

I.C.C. exemptions, like F.L.S.A. exemptions, are to be interpreted narrowly. *See, e.g., Mr. B's Services,* 934 F.2d at 120–122. Again, only a few courts have also considered—generally in the context of injunctive actions commenced by the Interstate Commerce Commission against car services—whether certain taxi or limousine operators are "motor carriers." They generally did so under the old Motor Carrier Act, which was worded slightly differently than the R.I.C.A. 49 U.S.C. § 303(b)(2) partially exempted from I.C.C. regulation "taxicabs, or other motor vehicles performing a bona fide taxicab service." While the "bona fide taxicab service" language was in effect, the I.C.C. took the position that a bona fide taxicab service consisted solely of local operations, which is to say, within a municipality and its immediate environs. *Whitman's Black and White Cab Company, Inc., Common Carrier Application,* 47 M.C.C. 737 (1948). The term "local" was thereafter defined by the I.C.C. to encompass a range of 70 miles or less.

In *Mr. B's Services,* 934 F.2d 117, the I.C.C. sought to prohibit Mr. B's from operating as an interstate motor carrier without a certificate of convenience and necessity. The company was essentially a local taxi service in Beloit, Wisconsin, but it made interstate trips of 100 miles, more or less, to transport employees of the Chicago and North Western Transportation Company from Janesville, Wisconsin to Chicago and Northlake, Illinois, pursuant to a contract with the railroad. The I.C.C. contended that Mr. B's was operating as an interstate motor carrier. Mr. B's

---

**11.** Thus, motor carriers that do not cross state lines are not subject to the Secretary's regulation. This does not apply to D.L.C., which admittedly transports passengers from New York to Connecticut, and also on occasion to New Jersey. D.L.C.'s for hire license from Westchester County specifically authorized interstate travel.

claimed it was exempt from I.C.C. regulation because is was a "taxicab service."

The district court agreed with defendant. It rejected the I.C.C.'s contention that Mr. B's had forfeited the taxicab status to which it would otherwise have been entitled because of its infrequent interstate trips to Chicago and Northlake. In particular, it rejected the agency's flat contention that no service could qualify as a "local operation" if it handled trips of more than 70 miles from its base of operations.

The Seventh Circuit reversed, concluding that the district court had not given appropriate *Chevron* deference (*Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)) to the I.C.C.'s position that trips of more than 70 miles were not "local" in nature and thus automatically disqualified a motor carrier from taxicab status. The Court of Appeals was unpersuaded by the district judge's conclusion that the "non-local" portion of Mr. B.'s business was *de minimis*. In view of the agency's position, the issue was whether its service was "solely local," not "mainly local." Since Mr. B's service on occasion strayed over the 70–mile limit, it was a motor carrier. (I have no doubt that Mr. B's would also have qualified as being in the "business of operating taxicabs" under the Department of Labor's Field Office Manual, precisely because that manual focuses on whether the operator serves "predominantly" local needs rather than "exclusively" local needs).

Some years earlier, the District Court in New Hampshire reached the opposite result in *Interstate Commerce Commission v. Miller*, 360 F.Supp. 1167 (D.N.H.1973), but in a different regulatory and factual context. In *Miller*, the I.C.C. sought to enjoin a taxi company in the Portsmouth, New Hampshire area from occasionally transporting passengers to Logan Airport in Boston—a distance of some 50 or so miles. The defendant had an exclusive contract with the Department of Defense to take servicemen to Logan; it also advertised to the general public in Portsmouth that its cabs were available for trips to Logan. It did not pick up passengers at Logan and only took people to the Boston airport when asked by the passenger. Finally, few such trips were made. In all other respects, the defendant ran a purely local operation in the Portsmouth area.

The district court concluded that Miller's taxicab operations were "primarily" local in nature and so fell with the exemption from I.C.C. regulation for "taxicabs, or other motor vehicles performing a bona fide taxicab service." 49 U.S.C. § 303(b)(2). In so holding, the court relied on the infrequency of the defendant's interstate operation, the availability of alternative transportation from Portsmouth to Boston; the fact that defendant did not pick up passengers at Logan or have any presence at that airport; and the fact that Miller's operation was "primarily local in nature." *Id.* at 1171.

The difference between *Miller's* reliance on the concept of "primarily" local service and *Mr. B's* reliance on the concept of "exclusively" local service is, it turns out, one of timing. At the time *Miller* was decided, the I.C.C. had not adopted its "70 mile" rule. Indeed, as the district judge in *Miller* noted, in 1973 the Commission had eschewed the notion of a "rigid mileage limit beyond which an operation will not be considered a bona fide taxicab service." *Miller*, 360 F.Supp. at 1170 (citing *D & M Taxi Co., Inc., Common Carrier Application*, 96 M.C.C. 439, 445 (1964)). By the time *Mr. B's* was decided, however, the I.C.C. had adopted the 70 mile rule and had taken the position that even infre-

quent trips outside that radius would cause a motor carrier to lose its taxicab status.[12]

■ D.L.C.'s business is "predominantly" local, and if that were the relevant standard I would surely conclude that defendant was not subject to the Secretary of Transportation's regulation. The undisputed evidence demonstrates that D.L.C. makes trips of up to 100 miles on occasion—well outside the 70–mile range that has traditionally served as the outer boundary of "local" service. But the fact that defendant makes such trips infrequently (at the rate of once a month or less, according to recently-submitted evidence—see Letter of Robert J. Levine, Esq., dated January 28, 2005) is of no moment under a "solely local" standard. Thus, for purposes of the motor carrier exemption, D.L.C. is not a "taxicab service," and therefore, the motor carrier exemption applies.

It might appear at first blush that defendant cannot be both a taxicab operator for F.L.S.A. purposes and a motor carrier (which means, not a taxicab operator) for R.I.C.A. purposes. But this seemingly illogical proposition is perfectly plausible, because the two different agencies involved (the Departments of Labor and Transportation) use two different (and contradictory) standards to define what a taxi service is. In considering whether an employee is covered by the motor carrier exemption to the F.L.S.A., the Department of Labor does not impose the definition of "business of operating taxicabs" that it uses for its taxicab exemption on the Department of Transportation (which has its own definitions). Instead, it defers to that Department's rules concerning who is subject to the Secretary's regulatory power

and who is not. Plaintiff can hardly quarrel with the logic of applying both exemptions to defendant, since he argued strenuously that D.L.C. was entitled to neither exemption.

Plaintiff next argues that the Secretary of Transportation regulates vehicles, not drivers or the companies that employ them. (Pl. Mem. at 10.) Thus, according to plaintiff, the motor carrier exemption may apply to D.L.C.'s vehicles, but would not apply to plaintiff. That is absurd. The motor carrier exemption is part of the Fair Labor Standards Act—a law that regulates labor, not vehicles. If plaintiff were correct, there would be no motor carrier exemption to the F.L.S.A! In any event, Section 24a00(a) of the aforementioned Field Operations Manual of the Department of Labor, which discusses the motor carrier exemption to the F.L.S.A., says as follows:

(a) FLSA Sec 13(b)(1) provides that FLSA Sec 7 shall not apply to any employee for whom the Department of Transportation's Federal Highway Administration (DOT/FHWA) has power to establish qualifications and maximum hours of service . . . [13]

Plaintiff's reliance on *Mr. B's* for this misguided argument is misplaced. As discussed above, the district court in that case had concluded—incorrectly—that a taxicab company could transport passengers interstate and remain exempt from I.C.C. regulation "so long as such transportation comprised only a small portion of the services provided." *Mr. B's*, 934 F.2d at 122. Plaintiff quotes—out of context— the Seventh Circuit's correction of the district court's reasoning as support for its

---

12. Interestingly, if the Commission had settled on such a rule, the result in *Miller* would have been no different, because Logan is less than 70 miles from Portsmouth.

13. The LEXIS citation for Section 24a00 is "FOH 2.24a".

argument that the motor carrier exemption does not apply to drivers: the Seventh Circuit stated that "Section 10526(a)(2) exempts 'a *motor vehicle* providing taxicab services,' it does not exempt a taxicab company." *Id.* (emphasis supplied) (quoted in Pl. Mem. at 10). Plaintiff did not quote the Seventh Circuit's next sentence, however, which makes it clear that the court was simply addressing the district court's erroneous revenue-based argument: "Hence, the focus must be on whether the motor vehicle provides services that are local in nature, not on whether the percentage of revenues generated from ... the interstate transportation constitutes a small portion of the taxicab company's total operation." *Id.* In context, therefore, it is clear that the Seventh Circuit's comment limiting the motor vehicle exemption to vehicles was not a statement that the motor carrier exemption does not apply to drivers or their employers. The very words of Section 13(b)(1) are to the contrary.

Finally, plaintiff protests that defendant could not be a motor carrier because D.L.C. has never acquired the required certificate of convenience and necessity from the Secretary of Transportation or posted the required proof of insurance and bond. But all that means is that D.L.C. is operating illegally when it transports passengers in interstate commerce. The defendant in *Mr. B's* had not obtained the necessary certificates or filed the insurance papers, either; that is why the I.C.C. was able to obtain an injunction against its interstate carriage.

Thus, regardless of whether D.L.C. is in the "business of operating taxicabs" as that term is understood by the Department of Labor, the fact that it engages in even a modest amount of "non-local" transportation means it is an interstate motor carrier, and that its drivers are subject to the exclusive regulation of the Secretary of Transportation where maximum hours of service are concerned.

### Conclusion

Because Defendant is not subject to the maximum hours rule of the F.L.S.A., this court lacks subject matter jurisdiction over the plaintiff's federal claim. Count One is thus dismissed with prejudice.

Plaintiff has also asserted a wages and hours claim under state law. Plaintiff has asked that I dismiss that claim without prejudice if I decline to hear the federal claim. I am happy to grant that request. Count Two is dismissed without prejudice to the commencement of a new action in the New York State Supreme Court—an action in which, I would imagine, Westchester County's regulatory scheme will carry considerably more weight.

Count One of the complaint is dismissed with prejudice. Count Two is dismissed without prejudice. Each party shall bear its own costs.

The Clerk of the Court is directed to close the file.